358 So.2d 1214 (1978)
STATE of Louisiana
v.
Alexander FERGUSON.
No. 60526.
Supreme Court of Louisiana.
April 10, 1978.
Concurring Opinion May 26, 1978.
*1216 Clyde D. Merritt, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Nick F. Noriea, Jr., Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
A grand jury indictment charged defendant Alexander Ferguson with aggravated rape, a violation of Article 42 of the Criminal Code. A unanimous jury found him guilty of attempted aggravated rape, a lesser included offense. He was sentenced to twenty years at hard labor.
Assignments 1, 2, and 3
In a motion to quash defendant alleged that the grand jury that indicted him did not include citizens from the Desire Housing Project because the process servers would not go into that area. It was also alleged that those not registered to vote were not included in the grand jury list by the jury commission unless they volunteered. The result of this practice, it is asserted, was to systematically exclude residents of the Desire Housing Project and that segment of the community not registered to vote.
When the general venire was formed from which was drawn the August 1975 grand jury that indicted defendant, service upon prospective jurors was not made within the heart of the project. Faced with this identical issue in State v. Cage, 337 So.2d 1123 (La.1976), we affirmed the trial court's granting a motion to quash an indictment by a grand jury from which membership of the same portion of the community had been deliberately not included, i. e., deliberately excluded.
Nevertheless, following the quashing of the indictment in Cage, the grand jury commission reformed its procedures soon after the venire for the present grand jury was selected. By the time the petit jury venire was selected for the present case, no unconstitutional exclusion of any segment of the population is shown.
We have determined that Cage should be applied only prospectively to jury venires improperly constituted by reason of the practices reprobated by the Cage holding, especially since the practices were terminated as a result of the Cage decision. The interest at stake (proper selection of jury venires) has been adequately served by Cage and the corrective measures thereafter instituted. No individual unfairness has resulted in the present case.
As in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the application of Cage prospectively only to venires selected after the date of its decision, will adequately vindicate the constitutional interest at stake. The quashing of the indictment in Cage secured correction and purification of the venire-selection procedures held defective therein. The practice condemned in Cage of deliberately excluding a portion of the community from potential inclusion in jury venires, because of the difficulties of effecting service in the neighborhood "did not rest on the premise that every criminal trial, or any particular trial, was necessarily unfair," 420 U.S. 32, 95 S.Ct. 705, because not conducted in accordance with the requirements of Cage.
*1217 Under these circumstances, the vindication of the constitutional interest protected by Cage does not require reversal of other convictions, fairly tried before petit juries selected from properly confected venires, because of Cage defects in the method of selecting the grand jury which indicted the accused.
We therefore find no reversible merit in these assignments.
Assignment 4
According to the state's theory of the case, at approximately 4:30 on the morning of July 27,1975, Floyd Lamb was awakened by the screams of his wife that a man was in the room. A fight between Lamb and a masked intruder ensued. During the affray the light in the room was turned on and the mask fell from the intruder's face. Lamb pleaded with him not to hurt them. Despite his plea, Lamb was stabbed until he was rendered half-unconscious and was thrown onto the floor. The attacker then raped his wife.
Lamb regained consciousness as the rapist departed. He noted at that time that the attacker was wearing light grey trousers and a figured shirt. Also he recalled having seen this same person the defendant Ferguson about a week before at an apartment nearby. Later inspection revealed the rapist had entered through a side window of the Lamb apartment; five dollars were missing from Mrs. Lamb's purse, and their tape deck and Lamb's automobile were also missing.
About one o'clock that afternoon the police drove Lamb and his wife to the station where they were shown a group of photographs of black males. All were approximately the same age. From the photographs both Lamb and his wife identified Ferguson as the attacker.
Prior to trial defendant filed a motion to suppress identification alleging that his photograph was viewed under circumstances suggesting that he was the perpetrator of the crime. This, it was alleged, was a violation of the principles announced by the United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). He alleged that the impermissible suggestions so tainted his identification his constitutional right to due process was violated. The motion was denied.
At the hearing held on the motion to suppress the defense failed to establish any degree of impermissible suggestion. Lamb and his wife readily and independently identified defendant from the group of photographs exhibited by the police. In addition, their in-court identification had a source independent of the out-of-court identification. Each had met defendant on two occasions, five days before July 27 and at the time of the attack. On the latter occasion they were in close contact with him for an appreciable time. During the attack the lights were on and Ferguson's mask fell from his face.
Even where a previous out-of-court identification is impermissibly suggestive, the witnesses' subsequent in-court identification does not offend due process where it has a source independent of the out-of-court identification. State v. Judson, 329 So.2d 742 (La.1976); State v. Allen, 251 La. 237, 203 So.2d 705 (1967). The ruling of the trial judge was correct.
The assignment has no merit.
Assignments 5 and 12
A motion to suppress for use as evidence all objects seized on July 27, 1975, by the police in a search of the premises occupied by the defendant was filed on his behalf. Objects referred to included a radio, an automobile and other tangible things in the state's possession. The seizure is opposed on the grounds that it was without a warrant or probable cause in violation of defendant's Fourth and Fifth Amendment rights. The motion was denied.
At the hearing on the motion the state stipulated that law officers had seized one am-fm radio-cassette player-recorder, one pair of grey pants, one grey shirt, one *1218 brown belt, a pink and brown scarf, a set of men's underwear, green pants and shirt, black shoes and a man's wrist watch.
Officer Brady testified that at ten o'clock on the morning of July 27 Officer Jones informed him that he had information that Alexander Ferguson had committed a rape. Jones asked Brady to accompany him. They proceeded with other policemen to 6682 Chef Menteur Highway where Ferguson lived. Upon arrival they knocked at the door and were greeted by a pregnant woman who identified herself as Mrs. Ferguson. In Brady's presence Jones asked her if Ferguson was home and when she acknowledged that he was, she was asked if they could talk to him. Saying her husband was in the bedroom sleeping, she consented and invited them in.
Ferguson was awakened, informed of his rights and told by Officer Jones that he was under arrest for aggravated rape. At this time Brady observed two sets of men's clothing lying near a chair in the small bedroom. He inquired of Mrs. Ferguson what clothes her husband was wearing the night before. When she said grey trousers and a grey shirt Brady picked them up and observed bloodstains on the trouser leg. Ferguson then asserted that he was wearing, instead, a green outfit lying near the grey trousers and shirt.
Meanwhile Brady observed on the shelf of an armoire nearby a radio with the name "Lamb" inscribed thereon. All of these items were seized. As Ferguson was dressing Brady saw bloodstains on his undershirt and made him change while Brady took possession of the stained shirt. Ferguson was then transported to central lock-up.
Lorraine Johnson, who was apparently Ferguson's common-law wife, conceded at the hearing that she lived at 6682 Chef Menteur and that she was pregnant when the officers arrived. Although she denied inviting them into the house, on cross-examination she admitted that two assistant district attorneys came to the house later that morning. At that time, she acknowledged, she spoke to them about the incident and told the officers Ferguson wore grey trousers and a grey shirt when he left the house the night before.
The constitutional validity of third party consent demonstrates the fundamentally different nature of a consent search from waiver of a trial right. Generally a spouse may consent to the search of the home, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); State v. Johnson, 343 So.2d 155 (La.1977); State v. Cooley, 260 La. 768, 257 So.2d 400 (1972); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968); and a third party holding common authority over, or other relationship to, the premises or effects sought to be inspected may consent to a search. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).
The question of consent is a question of fact under the particular facts and circumstances. Here the trial judge was called upon to decide between the testimony of the police officer or Ferguson's wife. There is no compelling evidence in this record warranting a rejection of the trial judge's determination of this credibility issue in favor of the state. His discretion in matters of this nature is entitled to great weight.
This assignment has no merit.
Assignment 6
Article 784 of the Code of Criminal Procedure sets forth the method for selecting the petit jury panel to try the case. The article requires that, "In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court." The defense contends this was not done. Instead, it is asserted, the trial judge was presented with the list containing the petit jury venire on the day of trial. Examination of prospective jurors then proceeded in the order in which their names appeared on the petit jury venire.
*1219 This procedure was therefore contrary to that prescribed by Article 784 and, the defense contends, unfair to the accused in this respect: By permitting voir dire in the order set forth on the petit jury venire, the state enjoyed an unfair advantage over the defendant because of its superior ability to accumulate information and data respecting prospective jurors. With this advantage the state could more favorably exercise its peremptory challenges by an overview of the entire venire enabling it to anticipate which members of the venire would more probably favor the state's position.
In State v. Hoffman, 345 So.2d 1 (La. 1977), this court considered the contention raised in the case at bar and Article 409.1 permitting a jury panel in Orleans Parish to be selected from a central jury pool rather than from the petit jury venire. In resolving the issue the court concluded that the two articles were not in conflict and the mandate of Article 784 requiring the drawing "indiscriminately and by lot in open court" was applicable whether the jury panel is selected from a petit jury venire or from a central jury pool.
Nevertheless, because the court had authoritatively construed the apparent inconsistency between Articles 409.1 and 784 for the first time in the Hoffman case contrary to the construction adopted by the judges of the Orleans Parish Criminal District Court, the Hoffman decision was given prospective operation only, inapplicable to cases where a jury panel was selected prior to the decision's effective date April 26, 1977.
In the case at bar the petit jury was selected on December 8, 1975 and the finding in the Hoffman case that Article 784 was applicable in Orleans Parish is inapplicable to this prosecution.
This assignment has no merit.
Assignment 7
Defense counsel complains that the trial judge erroneously granted the state's challenge for cause of prospective jurors because they were unalterably opposed to capital punishment. Capital punishment, the defense argues, was not then a valid punishment, because statutes of other states imposing the death penalty which were similar to Louisiana's death penalty statute for murder were held unconstitutional in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 decided in 1972. Subsequently, in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 212 (1976), the death penalty in Louisiana's aggravated rape statute was also declared unconstitutional. La.Rev.Stat. 14:42.
The substance of the defendant's objection is that it was improper to excuse jurors with objections to the death penalty, since (in view of Furman) the death penalty was inapplicable. No complaint is made that the challenges for cause were improperly sustained, if indeed this was a capital case.
As the defense argument is understood, it contends that no valid capital punishment for aggravated rape existed during the period following the decision in Furman and until the reenactment of the death penalty for aggravated rape by Act 612 of 1975, effective September 12, 1975.
The present offense was tried between Furman (which in 1975 invalidated capital punishment for the first degree murder statute) and Selman (which in 1976 invalidated capital punishment for aggravated rape). At that time, the death penalty for the aggravated-rape statute had been upheld by us against a constitutional attack. State v. Selman, 300 So.2d 467 (La.1974), later reversed in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 212 (1976).
At the time of the trial in the instant case, therefore, a challenge for cause based upon the prospective juror's opposition to the death penalty was a relevant and permissible challenge. It was not until July 6, 1976, when the United States Supreme Court in Selman v. Louisiana declared the death penalty in Louisiana's aggravated rape statute unconstitutional, that a challenge for cause based upon a prospective juror's opposition to the death penalty became irrelevant for offenses committed prior to the effective date of Act 612 of 1975.
*1220 Under these circumstances it was not error for the trial judge to grant the challenges for cause complained of here.
Assignment 8
(Not briefed, considered abandoned.)
Assignment 9
The victim's husband was under cross-examination by defense counsel. He was asked if he remembered saying on direct examination that he passed out during the encounter with the defendant. He replied that he remembered saying that he was "about to pass out;" whereupon, defense counsel queried, "If you said you passed out you made a mistake?", and the witness answered "Yes." Then defense counsel said, "So far you made two . . ." Before he could finish the statement the state's attorney objected and was sustained.
While the record does not indicate any basis for sustaining the state's objection to this question, likewise the defendant does not show any prejudice reflected by this ruling, which was apparently intended to reiterate the discrepancy in the witness' testimony fully explored before the jury.
We find no reversible merit to this assignment.
Assignment 10
We find no abuse of discretion by the trial court in sustaining a state objection to an argumentative question by the defendant's counsel.
Assignment 11
Defendant complains that it was error for the state to introduce a copy of his hospital record in evidence. The grounds stated at trial were that, although he was aware that the state had caused a subpoena duces tecum to be issued and that the motion therefor was in the record, he had never seen the hospital record which was subpoenaed. Defense counsel also asserted the hospital record sought to be introduced did not comply with law.
On this appeal these grounds for objection are apparently abandoned, and the defense brief contends instead that the hospital record was irrelevant and disclosed, to defendant's prejudice, that he had incurred a gunshot wound years before when he was nineteen years old.
The contentions on appeal are not properly presented. The grounds for objection must be stated at the time of the ruling, and matters not urged at the trial cannot be availed of on appeal. La.C.Cr.P. art. 841.
Assignment 13
At the close of the state's case, defense counsel moved for a directed verdict. The motion was denied and the ruling is assigned as error.
Since the amendment of Article 778 of the Code of Criminal Procedure by Act 527 of 1975, effective September 12, 1975, the motion for a directed verdict is no longer permitted in a jury trial. This amendment, being procedural in nature, is applicable to this December 8, 1975 trial although the trial involved a July 27, 1975 offense. State v. George, 346 So.2d 694 (La.1977); State v. Jackson, 344 So.2d 961 (La.1977).
This assignment is without merit.
Assignment 14
Prior to presentation of evidence on behalf of the defense, counsel for Ferguson, out of the presence of the jury, informed the trial judge that a conflict had arisen between him and his client. Based upon this representation, Ferguson was permitted to testify out of the presence of the jury for the limited purpose of establishing the conflict. He testified that counsel had advised him that error had been committed by rulings of the trial judge and the errors would be corrected by the supreme court. It was counsel's advise to Ferguson to rest and not present any evidence for the defense. Ferguson stated, however, that it was his wish to present his defense of alibi.
At this point defense counsel asked for time to consult with the public defender and to study the American Bar Association *1221 standards relating to the proper procedure in such a case, where he and his client could not agree upon the defense tactics. The request was denied, the trial judge ruled that defense counsel must decide to either rest or proceed with the defense. After objecting to the ruling, defense counsel proceeded with the defense by interrogating several witnesses in an effort to establish an alibi for his client.
Defense counsel argues that the refusal of the trial judge to grant time to obtain advice forced him to proceed with a defense for which he was unprepared. In effect, it is claimed, the ruling deprived defendant of his right to counsel and due process.
In our view the defendant was not denied adequate assistance of counsel. To the contrary, this record demonstrates that defendant was ably defended at all stages of the trial. Defense counsel was obviously competent and well-prepared. No abuse of discretion is apparent in the ruling of the trial judge.
This assignment is without merit.
Assignment 15
At defense counsel's written request the trial judge furnished a copy of his proposed instructions to the jury. Therein the trial judge set forth that the permissible verdicts for the charge of aggravated rape were guilty, guilty of attempted aggravated rape, guilty of simple rape and not guilty, as prescribed in Article 814 of the Code of Criminal Procedure, as amended by Act 126 of 1973.
Defense counsel objected to this proposed instruction, requesting that the judge instruct, instead, that the permissible verdicts were guilty, guilty of attempted aggravated rape, guilty of simple rape, guilty of forcible rape, guilty of attempted forcible rape and not guilty, as prescribed by Act 334 of 1975, amending Article 814 of the Code of Criminal Procedure.
The trial judge denied the requested instruction and charged the jury in accordance with the written instructions furnished to defense counsel. Objection was made to the denial of the requested instructions and to the instructions given by the trial judge.
The offense in this case occurred on July 27, 1975, at which time the instructions given by the trial judge were in effect by virtue of Act 126 of 1973 amending Article 814. However, at the time of the trial on December 8,1975, Act 334 of 1975, effective September 12, 1975, had further amended Article 814 to prescribe the permissible verdicts which were the subject of defendant's request for special instructions that is, guilty; guilty of attempted aggravated rape; guilty of simple rape; guilty of forcible rape; guilty of attempted forcible rape and not guilty.
Recently this court held in State v. Martin, 351 So.2d 92 (La.1977) that the permissible verdicts prescribed by Act 334 of 1975 for a prosecution for aggravated rape are procedural in nature. As such, it was held, they are to be applied retroactively. Thus, according to that decision, at the time of this trial on December 8, 1975, Act 334 of 1975 contained the permissible verdicts applicable to this July 27, 1975 offense which occurred prior to the September 12, 1975 effective date of Act 334 of 1975.
Article 803 of the Code of Criminal Procedure prescribes that when a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under the provisions of Article 814, the court "shall" charge the jury as to the law applicable to each offense. Instructions on permissible verdicts prescribed by law are therefore mandatory. State v. Brown, 214 La. 18, 36 So.2d 624 (1948). Failure of the trial judge to fully charge the permissible verdicts then applicable to the charge in the indictment requires a reversal of the conviction. State v. Martin, supra.
Against these propositions mandating an instruction in this case that the responsive verdicts to this aggravated rape charge should include forcible rape is the fact that the crime of forcible rape did not exist in Louisiana law until it was provided for and established by Act 333 of 1975, effective September 12, 1975.
*1222 It is obvious that the trial judge could not instruct the jury that they could find the accused "guilty of forcible rape" or "guilty of attempted forcible rape" as required by Act 334 of 1975 when the crime of forcible rape established by Act 333 of 1975 did not exist at the time this offense was committed. For, while matters of procedure established by statute can have retroactive effect, substantive matters can only operate prospectively. State v. Sepulvado, 342 So.2d 630 (La.1977). Statutes establishing crimes and punishment are of course substantive in nature.
Faced with this dilemma, the trial judge could not give retroactive effect to the responsive verdicts prescribed by Act 334 of 1975. Therefore, he properly instructed the jury that the permissible verdicts were those in effect at the time of the offense, as prescribed in Article 814 of the Code of Criminal Procedure, as amended by Act 126 of 1973, which were the instructions proposed by him.
This assignment has no merit.
Assignment 16
Defendant calls for a review of the entire proceeding for errors patent on the face of the record. Consideration has been given to possible errors discoverable by a mere inspection of the pleadings and proceedings, without inspection of the evidence, but no such errors were found. La.C.Cr.P. art. 920.
For the reasons assigned, the conviction and sentence are affirmed.
SANDERS, C. J., concurs and assigns reasons.
SUMMERS, J., concurs in result and will assign reasons.
SANDERS, Chief Justice (concurring).
As noted in the Per Curiam, the pertinent decision here is State v. Cage, La., 337 So.2d 1123 (1976). I dissented in that case and would prefer to overrule it. However, in affirming the conviction, the present judgment makes that decision prospective only, thus limiting its effect. Hence, I concur.
SUMMERS, Justice (concurring).
While I agree with the result reached in this appeal, it is necessary that I express my disagreement with the Court's treatment of Assignments 1, 2 and 3.
As I understand the facts of this case, the general venire from which the grand jury was formed which indicted the defendant Ferguson is the identical venire and grand jury which indicted Cage. (337 So.2d 1123 (La.1976)). It is also the identical venire and grand jury which indicted Harvey and Atwell, (No. 60979 on the docket of this Court), 358 So.2d 1224 and Youngblood (No. 61322, pending on the docket of this Court). 354 So.2d 211. This grand jury was impaneled on March 1, 1975 and remained in office until August 31, 1975.
By this grand jury Harvey and Atwell were indicted on April 3, 1975, Youngblood was indicted on April 17, 1975, Ferguson was indicted on August 7, 1975 and Cage was indicted on August 14, 1975.
According to the record involving the selection and impaneling of the grand jury, service of prospective jurors was not made within the heart of the Desire Project. The Commissioner accounted for the failure to serve residents within the heart of the project by saying the process servers were threatened by the residents of the project, their tires were cut "and everything else". He stated, however, that residents on the outskirts of the project were served.
Of those who lived within the project and whose names were drawn for inclusion on the jury venire from which the grand jury was drawn, the chairman of the jury commission guessed that less than fifty percent resided within the heart of the project. He was also of the opinion that much less than ten percent of the grand jury venire were residents of the project.
The jury wheel from which the grand jury venire of 425 was drawn consisted of eighteen thousand names. These names were, in turn, taken from files containing two hundred thousand names compiled from the voter registration list. The commissioner *1223 could not say how many residents of the Desire Project were included on the list from which the grand jury venire was selected.
A claim that this practice was to systematically exclude residents of the Desire Project is not well-founded. Prospective jurors from the Desire Project were served and included in the list from which the grand jury venire was drawn. While a segment of the housing project was not included because of the danger to the process servers, a reasonable conclusion from the evidence is that the excluded percentage was small. Furthermore, the exclusion, if any did in fact occur, resulting from the temporary situation existing at the time, was not an intentional or systematic exclusion. It was instead justified under the circumstances. La.Code Crim.Pro. art. 409, 409.1; State v. Edwards, 287 So.2d 518 (La. 1973). The record indicates that, beginning the next month, September 1975, process servers did in fact serve prospective jurors throughout the project, presumably with the help of police protection not theretofore available.
While the record does not set forth the size or population of the Desire Project, courts can take cognizance of the fact that there are several other projects of like size in the city of New Orleans. La.Rev.Stat. 15:422(6). Together these projects represent only a small fraction of the city's total population. It cannot be said, therefore, that the Desire Project includes a substantial segment of the community from which the jury was drawn. Only 2,695 of those residents are above eighteen years of age, some of whom were undoubtedly not qualified as jurors hardly a substantial segment of Orleans Parish where 539,471 citizens reside. La.Code Crim.Pro. art. 401. See 1970 census.
From the foregoing it must follow that the grand jury was selected generally and impartially from a cross section of the community. The record will not uphold a contrary inference, speculation or assumption. Purposeful discrimination may not be assumed or merely asserted. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
In the instant case it is obvious that the jury commission has not totally excluded a definable group from the grand jury panel, a condition which should exist if we are to hold that a cross section of the community is not represented by the jury venire from which the grand jury was selected.
The requirement that a cross section of the community be represented on the jury does not mean that every jury must contain representatives of all the economic, social, religious, racial, political and geographic groups of the community; frequently such complete representation is impossible. Thiel v. Southern Pacific Company, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946); La.Const. art. V, § 34; State v. Clifton, 247 La. 495, 172 So.2d 657 (1965).
Reason, the facts and the law support a finding, therefore, that no fraud has been practiced and no great wrong has been committed warranting setting aside the grand jury venire in this case. La.Code Crim.Pro. art. 419; State v. Rue, 236 La. 451, 107 So.2d 702 (1958). It is for these reasons I feel that Ferguson's conviction should be affirmed. It is for these same reasons that I dissented in State v. Cage, 337 So.2d 1123 (La.1976). As the majority opinion points out, this is the "identical issue in State v. Cage", nevertheless the Court did quash the indictment in Cage. Strangely, the decision in Harvey and Atwell, supra, also resulted in an affirmance of those convictions notwithstanding that the parties stipulated in Harvey and Atwell that the same evidence used in Cage on the issue would be applicable to Harvey and Atwell. In addition to my disagreement with the decision in State v. Cage, I cannot agree with the majority that "No individual unfairness has resulted in the present case."
Fairness cannot result when three indictments are upheld and one is quashed despite the fact that all four attacks on the indictments were based upon the identical contention that the same improper procedure was practiced in the selection of the grand jury venire. So long as courts adhere to the principles of due process of law *1224 and equal protection of the laws, such a result should not be condoned. U.S.Const. Amends. 5 and 14; La.Const. art. I, §§ 1 and 3.
Ferguson will never be convinced that Cage should have his indictment quashed and Ferguson's indictment should serve to convict him.
While the majority makes the Cage decision prospective only, seeking thereby to avoid overruling that decision, the facts do not lend themselves to a prospective application of Cage. To begin with, the quashing of the indictment in Cage did not "secure correction and purification of the venire-selection procedures held defective therein," the fundamental premise upon which the validity of that decision depends. Shortly after Cage was indicted on August 14, 1975, and before the indictment was quashed in the trial court on December 15, 1975, the jury commission in September 1975 began serving all those whose names were drawn for the grand jury venire throughout the Desire Project. Purification of the venire-selection procedures had been accomplished when Cage was decided.
Under accepted principles the solution to this case and the dilemma in which the Court found itself was to reverse the decision in State v. Cage, acknowledge the error there, and affirm the convictions in Harvey and Atwell, Youngblood and Ferguson.