384 So.2d 432 (1980)
STATE of Louisiana
v.
Morris E. HARDY.
No. 66414.
Supreme Court of Louisiana.
May 19, 1980.
*433 D. Milton Moore, III, Banks & Moore Law Offices, Monroe, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Johnny C. Parkerson, Dist. Atty., Nancy F. Gilliland, Asst. Dist. Atty., for plaintiff-respondent.
BLANCHE, Justice.[*]
The defendant was charged by bill of information with possession of an illegal weapon in violation of R.S. 40:1785. Defendant, present with counsel, waived formal arraignment and pleaded not guilty to the charge. On December 12, 1979, the trial court denied defendant's motion to suppress the evidence. The defense applied to this Court for supervisory writs, which were granted.
Evidence adduced at the hearing on the motion to suppress showed the following: On the night of October 1, 1979, the police received a report of an armed black man walking about the Tanglewood subdivision. While various officers were responding to the report, Morris Hardy arrived at 725 Tanglewood Drive to check on the progress being made on his home, still under construction. He parked his car facing the wrong way on the street and walked inside. While roaming around therein, the police arrived on the scene, observed the defendant, and ordered him out of the house in the belief that defendant was their suspect. In the course of the officers' investigation, defendant managed to get himself arrested for resisting arrest.
Deputy Pat Willis, also responding to the initial report, arrived just as defendant emerged from the side of his house, hands raised on order of the police. While defendant was being arrested by another officer, Willis proceeded to search defendant's car and, as luck would have it, found a .410 gauge sawed-off shotgun in the locked trunk. He also made arrangements to have defendant's car towed, although he could not recall whether he did so before or after his search. In the officer's account, the search was justified ". .to protect any items that [defendant] might have that were in the vehicle after it was towed in. It was for his protection. * * * [W]e inventory every vehicle that we have towed in * * * [o]n a standard form that the Sheriff's Department uses." Willis later *434 found out that defendant had been seized out of his own home.
Defendant's account is much different. He testified that Willis did not ask for his consent to search the car and failed to inquire whether he kept anything of value in it or whether alternative arrangements for the car were available. When questioned why he hadn't told the officers that the house was his, defendant replied, "[t]hey didn't ask me was the reason I didn't tell them."
The defense contends that the trial court erred in denying defendant's motion to suppress the evidence because the search of defendant's car was not part of a valid inventory search pursuant to the guidelines set down by this Court. Additionally, defense argues that even if we concluded that his arrest for resisting an officer was legal, it was not necessary to impound his vehicle because he could have left the car properly parked in front of his home. The defense concludes that the impoundment in his case was an unnecessary requirement and an overbroad exercise of police power.
Recently, in State v. Killcrease, 379 So.2d 737 (La.1980), we considered the purpose and justification for an inventory search and reiterated the rule that where the conduct of the police was inconsistent with their contention that the search was conducted for true inventory purposes, we have found the search to be unlawful.
The facts that we have considered as bearing upon whether the so-called inventory search was merely subterfuge are: (1) that formal impoundment procedures were not followed; (2) that the search was conducted in the field without asking whether any valuables were in the automobile and before a tow truck was even called; (3) that the defendant/owner was not asked for his consent to search or whether he would waive such a search; (4) that the defendant/owner was not asked whether he could, within a reasonable amount of time and with reasonable effort, make other arrangements to have someone else secure his automobile. Each search will depend upon its own peculiar facts and circumstances, and the facts as considered hereinabove are not all-inclusive.
The record in this case reveals that the search of defendant's car was not a true inventory search. Although a standard inventory form was used, other indicia of a valid inventory search appear lacking. Willis made the search "in the field", in front of defendant's home (as he learned later), not at the stationhouse. The officer could not recall whether he had called the tow truck before or after his search; defendant, for one, placed the arrival of the wrecker after the search was completed. Willis agreed with defendant that he had not asked for consent, inquired whether any valuables remained in the vehicle, or checked on alternative arrangements before going into the car. Moreover, defendant had parked his car beside the road (although pointed in the wrong direction) in a residential area. Willis testified that it had been raining that night, and that the driveway had not been built. He did not believe one could have pulled off the roadway. However, when challenged by counsel whether in that area it was customary for some vehicles to be parked on the side of the roadway rather than in a driveway or garage, the officer answered in the affirmative. There is evidence that there was no necessity to impound the vehicle considering its location and the probability of defendant's making bond on a misdemeanor charge.
Although Willis at the least followed standard departmental procedure in securing the car, this Court has cautioned that custom alone cannot validate a search. In State v. LaRue, 368 So.2d 1048 (La.1979), this Court re-emphasized the following observation made in State v. Jewell, 338 So.2d 633, 640 (La.1976):
"The claim is made that the search was conducted pursuant to a departmental regulation. If so, a police inventory procedure of this naturewhich permits arresting police officers unlimited discretion and without probable cause to make on-the-spot searches of vehicles at the scene of an arrestcannot (however *435 standard it may be with a local department) supersede the provisions of our state constitution restricting all agents of government from making unreasonable searches and seizures. Unconstitutional searches cannot be constitutionalized by standardizing them as a part of normal police practice."
Stripped of its inventory rationale, the search in this case lacks any other justification. The initial report to the authorities may have given the officers reasonable cause to question defendant, who was seen moving about at night in a house still under construction. The report certainly did not give the officers probable cause to arrest defendant, but even assuming that the circumstances of the defendant's refusal to cooperate with the officers generated probable cause to arrest him for resisting an officer under R.S. 14:108, the subsequent search of his vehicle far exceeded the proper scope of a search. See State v. Blanchard, 374 So.2d 1248 (La.1979). According to defendant's undisputed account, he had been removed from the immediate vicinity of his vehicle where he had been initially questioned and placed in the parked patrol car by the time Willis began his search. Here, as in Blanchard, supra, the area which was searched was not within defendant's immediate control so as to have presented even the possibility that he could have gained access to a weapon or destroyed evidence.
The conduct of the police in this case thus indicates that the authorities did not conduct a true inventory search of defendant's car but, instead, set out on a warrantless search of the vehicle without probable cause.
For these reasons, the writs of certiorari, prohibition and mandamus granted herein are made peremptory and the judgment of the trial court denying the motion to suppress is reversed and set aside. It is further ordered that the prosecution herein be and the same is hereby remanded to the district court for further proceedings in accordance with law.
REVERSED AND REMANDED.
NOTES
[*] Honorable RICHARD H. GAUTHIER participated in this decision as Associate Justice Ad Hoc.