426 So.2d 148 (1983)
STATE of Louisiana
v.
Caster D. SIMS.
No. 81-KA-3018.
Supreme Court of Louisiana.
January 10, 1983.
*151 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon H. Whitten, Dist. Atty., George H. Meadors, Asst. Dist. Atty., for plaintiff-appellee.
C. Sherburne Sentell, Minden, for defendant-appellant.
BLANCHE, Justice.
Defendant, Caster Sims, was charged by separate bills of information with operating a motor vehicle while intoxicated (La.R.S. 14:98), resisting an officer (La.R.S. 14:108), and possession of marijuana (La.R.S. 40:966). The three offenses were joined for trial. After a bench trial, the defendant was found guilty of each offense as charged. He was sentenced to fines amounting to a total of $525 in addition to receiving a total of 100 days in the parish jail. Each jail sentence was ordered suspended, and the defendant was placed on supervised probation.

FACTS
During the early morning hours of February 4, 1981, Claiborne Parish Deputy Sheriff George Shirey was on patrol on U.S. Highway 79 near Pine Hill. Shortly after midnight, Shirey spotted a vehicle on the northbound shoulder of U.S. 79 off the paved portion of the highway. As Shirey drove slowly past the parked car, he noticed that its headlights were on and its motor was running. He also observed that a person was seated inside the car, under the steering wheel, slumped over and apparently asleep. After he passed the car, Shirey returned and pulled his police car behind the parked vehicle.
Shirey walked from his car to the parked vehicle and tapped on the driver's door in an attempt to arouse the subject. Upon closer examination, the deputy recognized the person inside the car and knew him to be Caster Sims. Shirey opened the car door and called the defendant's name. Again, Sims did not awaken. The deputy touched the defendant on the shoulder. Sims awoke, but appeared disoriented. At this time, the deputy noticed a faint odor which he believed to be alcohol. The deputy further noted that the defendant was mumbling and slurring his words.
Shirey asked to see Sims' driver's license. The defendant stood up to look for his license in his wallet, but fell back into the car seat. Deputy Shirey asked Sims to step to the rear of his vehicle in order to use the police headlights in the search for the license. As Sims walked to the rear of his car, Shirey observed that he swayed and supported himself against the car.
Suspecting that the defendant was intoxicated, Shirey asked Sims to perform two field sobriety tests. Sims did poorly on both tests. Shirey then placed Sims under arrest for DWI and for no driver's license on his person.[1]
Deputy Shirey informed the defendant that he was under arrest and asked him to put his hands on the car to be handcuffed. Although Sims put his hands on the car, he refused to be handcuffed. The deputy had to use physical force to place the cuffs on the defendant.
*152 Once the defendant was handcuffed and seated in the back of the police car, Shirey returned to the defendant's vehicle to turn off the lights, motor and stereo. He noticed several music tapes in addition to a mounted tape player in the defendant's car. The deputy then walked back to the police car and radioed for a wrecker to bring the defendant's vehicle to the sheriff's office. Sims requested that his car not be moved.
Defendant's car was towed to the Claiborne Parish Sheriff's Office with Shirey and Sims following in the police car. At the sheriff's office, Sims was given an auto-intoxication test. He registered .081 percent.
After the intoxication test was administered, Deputy Shirey informed Sims that he was going to inventory his car. Sims did not respond. Shirey then proceeded to inventory the car for valuables. Plastic bags containing marijuana were found in the glove compartment of the defendant's car.

ASSIGNMENT OF ERROR NOS. 7 AND 8
By these assignments, the defendant argues that the trial court erred in denying his motion to suppress. He essentially contends that Deputy Shirey's initial encounter with him resulted in an unlawful seizure which tainted all evidence secured thereafter.
Both the Fourth Amendment to the United States Constitution and La. Const. art. 1, § 5 require that a "seizure" of a person by a law enforcement official be founded upon an objective justification. When the "seizure" takes the form of an arrest, the police officer must have probable cause to believe that the person arrested has committed an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Hathaway, 411 So.2d 1074 (La.1982); See also La.C.Cr.P. art. 213. To temporarily detain a person for purposes of investigation, the officer must have a reasonable suspicion that the person is committing, has committed, or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Lanter, 391 So.2d 1152 (La.1980); See also La.C.Cr.P. art. 215.1.
However, law enforcement officials do not need reasonable cause or probable cause to detain each time they encounter a citizen, for not all police-citizen contact involves a "seizure." Policemen enjoy the same liberty possessed by every citizen to address questions to other persons. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (Harlan, J. concurring). A person is "seized" within the meaning of the Fourth Amendment and La.Const. art. 1, § 5 only when the law enforcement official, by means of physical force or show of authority, has in some way restrained the liberty of the citizen. State v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); See State v. Salazar, 389 So.2d 1295 (La.1980).
In this case, Deputy Shirey stopped to investigate, for he felt that the defendant Sims might be in trouble. He had previously observed the defendant slumped over the steering wheel of his car which had its motor running and its lights on. The deputy knocked on the driver's door in hopes of arousing Sims. When Sims did not awaken, Deputy Shirey opened the car door, called the defendant's name, and tapped him on the shoulder. The defendant awoke and voluntarily responded to the deputy's request for a driver's license, but he could not find his license in his wallet.
We find that, given the circumstances involved in this case, the deputy acted lawfully when he investigated the parked car.
When Deputy Shirey asked Sims for his license, he had reasonable cause to detain the defendant for purposes of further investigation. Within the deputy's knowledge at that time were the following facts: the defendant had been asleep and slumped over the wheel of his car which had its motor running; he smelled of alcohol; and he slurred and mumbled his words as he *153 spoke. Thus, Shirey had reason to suspect that Sims had committed the offense of DWI and could lawfully detain him for investigation.
Prior to the time that Sims was requested to produce his driver's license, the deputy needed no probable or reasonable cause to detain, for he had not "seized" the defendant. The facts indicate that Shirey approached the parked vehicle merely to assist the driver. Shirey shook the defendant to arouse him, but only after he had knocked on the car door and had called the defendant's name. No demands were made upon the defendant or force applied. No "seizure" had occurred, for Deputy Shirey had not restrained the liberty of the defendant, either by means of physical force or show of authority.[2]
These assignments are without merit.

ASSIGNMENT OF ERROR NO. 9
The defendant claims that the trial court erred in denying his motion to suppress the marijuana found in the glove compartment of his car. He asserts that the marijuana was seized during an impermissible warrantless search.
The record clearly establishes that Deputy Shirey conducted a search of the defendant's car without a warrant. Therefore, the burden of proof shifted to the state to show affirmatively that the search and seizure were justified under the well-recognized exceptions to the warrant requirements of the Fourth Amendment and La.Const. art. 1, § 5. State v. Crosby, 403 So.2d 1217 (La.1981); State v. Hatfield, 364 So.2d 578 (La.1978).
The state contends that Deputy Shirey's search of the defendant's vehicle was a valid inventory search. Both this court and the United States Supreme Court have recognized a true inventory search to be an exception to the warrant requirement. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); State v. Jewell, 338 So.2d 633 (La.1976). To fall within the inventory exception, however, the state must prove that the impoundment of the defendant's vehicle was necessary and that the inventory of the vehicle's contents was necessary and reasonable in its scope. State v. Crosby, 403 So.2d 1217 (La. 1981); State v. Jewell, 338 So.2d 633 (La. 1976).
There are several factors which we have considered to be significant in determining whether a true inventory search has been conducted: (1) the vehicle could not have remained safely at or near the place it was stopped; (2) the search was not conducted in the field; (3) the tow truck was called before the search commenced; (4) formal impoundment procedures were followed; (5) the vehicle operator was asked if he consented to a search, if the car contained valuables, or if he would consent to the agency's failure to afford him the protection of an inventory search; (6) arrangements were made for someone designated by the operator to take possession or protective custody of the vehicle for him. State v. Hardy, 384 So.2d 432 (La.1980); State v. Killcrease, 379 So.2d 737 (La.1980); State v. LaRue, 368 So.2d 1048 (La.1979).
Applying these factors to our present case, we conclude that the state has sufficiently shown that the marijuana was seized during a true inventory search.
The defendant's vehicle could not have remained safely at or near the place it was stopped. A mounted tape player and several music tapes were inside the defendant's car. If the car was left alone on the public highway during the early morning hours, it may have been vandalized or the valuables may have been stolen from within the vehicle. Moreover, the car was parked near the intersection of U.S. Highway 79 and a parish road. Deputy Shirey testified that he had been concerned that the defendant's vehicle was obstructing the view of drivers who attempted to turn onto the highway from the parish road.
With regard to the second and third factors enumerated above, the record clearly *154 shows that the defendant's vehicle was not searched at the scene of the stop. Deputy Shirey radioed for a wrecker to tow the defendant's car to the sheriff's office. Approximately one-half hour after the defendant's vehicle arrived at the sheriff's office, Deputy Shirey conducted his search.
Formal impoundment procedures were followed by the deputy. A standard police form was used by Shirey to list the items found during the inventory of the vehicle.
Deputy Shirey did not ask the defendant whether he would consent to an inventory search or whether arrangements could be made for someone to take possession of the car. On two occasions, the deputy did inform the defendant Sims that his car was going to be inventoried, but Sims did not respond.
Although the defendant did not consent to the search and was not asked if anyone could take possession of his car, we find that the facts sufficiently establish that Deputy Shirey's search was a true inventory of the vehicle's contents.[3] Shirey clearly sought to protect the valuables inside the defendant's car. He had no reason to suspect that marijuana would be found in the vehicle. The search was not conducted to secure evidence, but merely to inventory the vehicle's contents in order to safeguard them, as incident to the vehicle's necessarily being taken into lawful police custody. State v. Killcrease, 379 So.2d 737 (La.1980); State v. Hatfield, 364 So.2d 578 (La.1978); State v. Gaut, 357 So.2d 513 (La.1978).
This assignment is meritless.

ASSIGNMENT OF ERROR NOS. 1 AND 2
The defendant contends, by these assignments, that the trial judge committed reversible error by requesting, during the examination of Deputy Shirey, that the defendant stand and give his height and weight. Defendant argues that the trial judge's request (1) violated the normal order of trial, C.Cr.P. art. 765 and (2) violated his Fifth Amendment rights.
The record shows that during the prosecutor's questioning of Deputy Shirey concerning the resisting arrest charge, the trial judge interrupted and asked the defendant to stand and state his weight and height. The defendant's first contention is that the normal order of trial set forth in La.C.Cr.P. art. 765 was violated, for testimony was elicited from the defendant during the state's presentation of the evidence.
The relevant portion of La.C.Cr.P. art. 765 provides:
"The normal order of trial shall be as follows:
(5) The presentation of the evidence of the state, and of the defendant, and of the state in rebuttal. The court in its discretion may permit the introduction of additional evidence prior to argument;"
La.C.Cr.P. art. 765 is procedural in nature and the record indicates it was adhered to in the present case. However, this article does not contemplate the presentation of evidence by the trial judge, and we do not approve of such conduct by the trier of fact. Such action may be interpreted as assistance to the state in the presentation of its case and reflect some bias on the part of the court. State v. Layssard, 310 So.2d 107 (La.1975).
Nevertheless, in this case, we find that the trial judge's action is harmless error, for no prejudice resulted to the accused. The record shows that Deputy Shirey later estimated the defendant's height and weight. In addition, the trial judge could personally observe these physical characteristics of the accused. Moreover, this was a trial before a judge and not a jury which may have been influenced by the judge's request.
The defendant's alternative argument is that the trial judge's request denied him his Fifth Amendment privilege against self-incrimination. We find that the defendant is not entitled to relief on this issue, for he did not raise this objection at *155 trial. It is well-settled that a new basis for an objection cannot be raised for the first time on appeal. La.C.Cr.P. art. 841; State v. Johnson, 389 So.2d 372 (La.1980); State v. Ferguson, 358 So.2d 1214 (La.1978); State v. Sanders, 357 So.2d 492 (La.1978).
These assignments are without merit.

ASSIGNMENT OF ERROR NOS. 3 AND 4
By these assignments, the defendant contends that there was insufficient evidence to prove that he was guilty beyond a reasonable doubt of driving while intoxicated, La.R.S. 14:98. He argues that the state failed to circumstantially prove that he "operated" his motor vehicle while intoxicated which is an essential element of La.R.S. 14:98.
In State v. Lindinger, 357 So.2d 500 (La. 1978), this court emphasized that the state under La.R.S. 14:98 must prove that the defendant did operate his vehicle while intoxicated on the day in question. The state, in our present case, sought to prove this element of the crime through circumstantial evidence.
When we review a conviction based on circumstantial evidence, we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Parker, 416 So.2d 545 (La.1982); State v. Bindom, 410 So.2d 749 (La.1982); State v. Austin, 399 So.2d 158 (La.1981). Not every hypothesis of innocence must be excluded; only those which are reasonable. State v. Bindom, 410 So.2d 749 (La.1982); State v. Austin, 399 So.2d 158 (La.1981).
As noted in the statement of facts, there were no eyewitnesses or direct proof that the defendant actually operated his vehicle while intoxicated. When Deputy Shirey first spotted the defendant's vehicle, it was parked on the shoulder of a public highway. The deputy had no idea how long the car had been parked. The car motor was running; the stereo and lights were on. A subsequent inventory search of the defendant's car did not disclose any alcoholic beverage containers or tracings of burned marijuana.
One possible hypothesis which can be advanced is that the defendant parked his vehicle and then consumed alcoholic beverages or smoked marijuana while in his car to become intoxicated. Given the facts of this case, however, we find that this hypothesis is not reasonable. It is unlikely that the defendant consumed any alcoholic beverages in his automobile after he had parked, for no alcoholic beverage containers were found in the car. Equally improbable is the theory that the defendant smoked marijuana as he sat in his car on the side of the road. Deputy Shirey testified that the defendant's car windows were rolled up when he initially approached the parked vehicle. Yet, the deputy only detected the smell of alcohol and did not encounter any odors resembling marijuana when he opened the defendant's car door. In addition, no evidence of burned marijuana was found during the inventory search. Another hypothesis is that the defendant walked away from his car and drank alcoholic beverages or smoked marijuana to become intoxicated. We find this hypothesis is unreasonable in light of the fact that the defendant was discovered slumped over his steering wheel with the motor running and the lights and stereo in operation.
The only reasonable hypothesis is that the defendant operated his vehicle while intoxicated. Therefore, we conclude that, viewing the evidence most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis had been excluded.
These assignments are meritless.

ASSIGNMENT OF ERROR NOS. 12 AND 13
The defendant contends that the trial court erred in finding sufficient evidence to convict the defendant of resisting arrest under La.R.S. 14:108. He further argues that his warrantless arrest was unlawful, and, therefore, he could lawfully resist the arrest.
*156 As to the defendant's second contention, we find it is without merit, for Deputy Shirey did have probable cause to arrest the defendant for both DWI and no driver's license on his person. Before the defendant was placed under arrest, Deputy Shirey had observed that the defendant Sims slurred his words and had difficulty standing and walking. The defendant smelled of alcohol and had failed two sobriety tests. In addition, Sims could not locate his driver's license. Therefore, Deputy Shirey lawfully arrested Sims for DWI and no driver's license on his person.
We also find that the evidence, when viewed in a light most favorable to the prosecution, was sufficient to convince a reasonable trier of fact of the guilt of the defendant, beyond a reasonable doubt, of every element of the crime of resisting arrest. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Sharp, 414 So.2d 752 (La.1982); State v. Guillot, 389 So.2d 68 (La.1980).
Deputy Shirey testified that he was in uniform and driving a marked patrol car on the night of the arrest. Sims knew prior to that night that Shirey was a deputy sheriff. Shirey further testified that he told Sims that he was under arrest and asked him to place his hands on the car to be cuffed. Sims did place his hands on the car, but refused to allow Shirey to handcuff him. Sims turned away from the deputy when he attempted to cuff him. Shirey grabbed one of the defendant's arms and placed the cuffs on it. The deputy then put the other cuff on Sims' other arm as he resisted. Shirey testified that cuffing Sims did not require a great deal of force, but he felt that Sims was resisting to the utmost of his ability.
La.R.S. 14:108(b) specifically states that any post-arrest resistance or opposition to the arresting officer constitutes a violation of the statute. The state's evidence clearly establishes that the defendant sought to resist or oppose Deputy Shirey as he acted in his official capacity.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 5
The defendant contends that the trial court erred in allowing the admission of the results of the defendant's intoximeter test because the times indicated on the "Rights Form Relating to the Chemical Test for Intoxication" (1:56 a.m.) and on the printout of the test results (1:03 a.m.) suggests that the defendant was advised of his rights after the test.
By La.R.S. 32:661(C), the state must show that the defendant was advised of certain rights before the intoxication test was administered in order for the results of the test to be admitted into evidence. La.R.S. 32:661(C) provides:
When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal. In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights; the law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test, provided however that a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form. If the above procedure is not complied with, the results of the test or any reference to it is inadmissible into evidence in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages.
In our present case, the defendant was advised of his rights, and he signed the required rights forms. The only question is whether the forms were signed before or after the intoxication test was administered.
*157 We hold that the trial court did not err in finding that the rights forms were executed before the intoxication test was administered. Although the printout of the auto-intoximeter machine indicates that the rights were given after the test, the deputy sheriff who administered the test and Deputy Shirey testified that the defendant was advised of his rights and signed the rights forms before the intoxication test was conducted. Both deputies explained that the confusion as to the times involved was due to a clerical error.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 6
The defendant asserts by this assignment that the trial court erred in allowing the introduction of the intoximeter test results because the state failed to show that the officer who administered the test was properly certified.
Deputy Sheriff William Jeffrey Pugh administered the auto-intoximeter test to the defendant. When questioned as to his qualifications, Deputy Pugh testified that he had been certified as an operator of auto-intoximeters on October 29, 1980. A copy of his certification was admitted into evidence. Pugh also stated, however, that he took and completed the four-hour certification course for the auto-intoximeter given by the State Police in November, 1980.
Defendant argues that Pugh's testimony indicates that he was certified before he completed the auto-intoximeter course, and, thus, the test results should not have been allowed into evidence.
We find that the defendant's argument is without merit. Pugh's testimony as to the month in which he was certified and the month in which he completed his auto-intoximeter course did indicate he was certified before he finished the course. However, when Deputy Pugh was asked to clarify his testimony, he stated that he did complete the auto-intoximeter course before he was certified.

ASSIGNMENT OF ERROR NO. 10
The defendant contends that the trial court erred in admitting into evidence the bag of alleged marijuana and the crime report identifying the bag's contents as marijuana, for the state failed to prove a proper chain of custody of the marijuana.
Deputy Shirey testified that he had marked the marijuana bags which were found in the glove compartment. He further stated that he had placed the bags into a larger evidence bag and had given Deputy Pugh the evidence bag. Pugh testified that he had received the evidence bag from Shirey and had given it to his replacement, Betty Moreland. However, the crime lab report, which identified the substance in the evidence bag as marijuana, stated that the bag had been submitted to the lab by W.W. Green. The state failed to show how W.W. Green had come into possession of the evidence bag.
The requirements for proper admissibility of demonstrative evidence were set forth in State v. Paster, 373 So.2d 170 (La.1979):
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Drew, 360 So.2d 500 (La.1978).
A continuous chain of custody is not essential, provided the evidence as a whole establishes that it was more probable than not that the object introduced was the same as the object which was originally seized by the deputies. State v. Sharp, 414 So.2d 752 (La.1982); State v. Drew, 360 So.2d 500 (La.1978).
*158 We find, in this case, that it is more probable than not that the marijuana introduced as evidence at trial was the same as that seized by Deputy Shirey. At trial, Deputy Shirey identified the evidence bag, its contents, and his handwriting on the bag. Deputy Pugh also identified the evidence bag. Furthermore, the crime lab report has Caster Sims' name on it and states that five plastic bags of marijuana were found in the evidence bag. The same number of plastic bags were discovered in the glove compartment of the defendant's car.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 11
The defendant alleges that the trial court erred in allowing the admission of the certified crime lab report (certificate) which concluded that the evidence seized from the defendant's car was marijuana. Sims argues that the state failed to provide him with proper notice required by La.R.S. 15:501 which states that the party seeking to introduce such reports must give the opposing party written notice of intention to do so not less than ten days prior to the commencement of trial.[4]
We find that the defendant's argument has no merit. The purpose of requiring notice of the state's intention to use the certified criminal lab report is to permit the defendant to adequately present his defense and avoid being surprised. In our present case, state did establish that it sent notice to the defendant and defense counsel by letter dated March 23, 1981. A copy of the crime lab's report was attached to the letter. The defendant's trial commenced on May 6, 1981. Although the state did not establish that the defendant received the notice, defense counsel concedes in brief that he received the notice. Therefore, the requirements set forth in La.R.S. 15:501 have been satisfied.

ASSIGNMENT OF ERROR NO. 14
The defendant argues that the trial court erred in overruling his objection to the bill of information which erroneously sets forth the statute for resisting an officer as La. R.S. 14:103 instead of La.R.S. 14:108.
Failure to cite the correct criminal statute number is a technical deficiency in the bill of information which is not grounds for reversal unless the defendant can show surprise or lack of notice which causes prejudice. C.Cr.P. art. 464; State v. Hicks, 376 So.2d 118 (La.1979); State v. Mallett, 357 So.2d 1105 (La.1978).
In the present case, no prejudice or surprise was shown by the defendant. The bill of information properly states that the defendant committed the offense of "Resisting an Officer." The wording of the bill of information is sufficiently clear to inform the defendant that he is charged with resisting an officer. Further, the correct statute number, La.R.S. 14:108, is stated in one portion of the bill of information.
This assignment is without merit.

DECREE
The defendant's conviction and sentence are affirmed.
AFFIRMED.
CALOGERO, J., concurs.
NOTES
[1] Sims was not charged with the offense of no driver's license on his person because his license was found later in his wallet at the sheriff's office.
[2] The facts involved in State v. Neyrey, 383 So.2d 1222 (La. 1979) are very similar to our present case. In Neyrey, supra, we held that no investigatory "stop" had occurred.
[3] In State v. Jernigan, 390 So.2d 1306 (La. 1980), we upheld the warrantless search of the defendant's car as a true inventory search even though the defendant did not consent to the search.
[4] La.R.S. 15:501 states:

The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than ten days prior to the commencement of the trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.