504 So.2d 156 (1987)
STATE of Louisiana, Plaintiff-Applicant,
v.
William HARRIS, Defendant-Respondent.
No. 18712-KW.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
*157 DeCelle and Holland by Malcolm DeCelle, Jr., Monroe, for respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., C. Mark Donahoe, Asst. Dist. Atty., Monroe, for applicant.
Before MARVIN, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
In this prosecution for possession of marijuana, we granted the application of the State of Louisiana for writs to review the ruling of the trial court suppressing marijuana seized in a search of the defendant's vehicle. We determine that the writ was improvidently granted. Therefore, the writ is recalled and the case is remanded to the district court for further proceedings.
Deputy Schleffman of the Ouachita Parish Sheriff's Office testified that at approximately 9:30 p.m. on May 31, 1986, he was in a marked vehicle on Ridge Drive. He was situated approximately fifty or sixty feet away from the defendant's vehicle which was near the intersection of Ridge Drive and Tippit. From this position he observed a pedestrian standing next to the driver's window of defendant's vehicle. He observed what he believed to be a drug purchase by the driver of the vehicle from the pedestrian.
Specifically, he testified that he saw the pedestrian hand the driver a cellophane bag with some substance inside in exchange for money. He stated that shortly thereafter the pedestrian saw him and immediately "took off running." The defendant simultaneously drove through a ditch approximately one and a half feet deep at a rapid rate of speed. He did so because the street was blocked by other vehicles and pedestrians. He almost struck a pedestrian in the process. The deputy intercepted what he clearly recognized as the same vehicle with the same driver shortly thereafter at the intersection of Cox and Tippit. He also noted the vehicle contained three passengers when first seen, and also when stopped.
After the stop, the officer stated that he asked the defendant "what had happened *158 to the dope." The defendant denied knowledge of any drugs. The deputy then asked for permission to search the vehicle which the defendant denied. He said he then decided to arrest the defendant for careless and reckless driving because of the defendant's reckless driving and the smell of alcohol on defendant's breath. In the meantime, Detective Crockett, a narcotics officer, arrived pursuant to the deputy's request. Crockett advised Deputy Schleffman that probable cause to obtain a search warrant for the defendant's vehicle did not exist under the circumstances. While the matter is somewhat unclear, our impression from the record is that the defendant was not told he was under arrest until after Crockett's arrival. The officer then testified that since none of the other subjects had a valid driver's license he ordered a wrecker to remove the vehicle which was blocking the roadway.
After the wrecker arrived, he and Deputy Crockett proceeded to take an inventory of the vehicle. They found a number of items located primarily in the trunk. These included camping equipment, a tackle box, life jackets, cassette tapes, a folding knife and a BB pistol. The officer stated that marijuana was also found on the front and back floorboard on the driver's side of the vehicle. The substance was observed from outside the vehicle with the assistance of a flashlight.
In his testimony, the defendant conceded that he had consumed one-half of a beer prior to this encounter. He also conceded that he drove through the ditch but said that he did so in an effort to avoid a continuance of an altercation which he was having with the pedestrian standing by his vehicle.
The defendant further testified that when he exited the vehicle the officer asked him about a "drug deal" and sought permission to search. The defendant testified that he declined the deputy's request to search unless the deputy produced a search warrant.
The defendant stated that the deputy told him there would be a substantial wait. The defendant said he indicated that he had the necessary time. The defendant estimated that "approximately an hour" passed before a narcotics officer arrived. During this whole period of time, he was standing in the search position with his hands on his vehicle. After the arrival of the narcotics officer and a discussion between Deputy Schleffman and that officer, the defendant stated that he was advised he was under arrest for careless and reckless driving and that his vehicle was to be inventoried. He stated this was the first occasion that he heard about the reckless driving charge.
At the conclusion of this evidence, without oral argument, the trial court took the case under advisement. A brief written opinion was rendered soon thereafter in which the court ruled that the "inventory search" did not meet the test of State v. Killcrease, 379 So.2d 737 (La. 1980). The court further indicated that it "has not found any valid basis for the search of defendant's vehicle" and sustained the motion to suppress.
We note that there is no doubt that the defendant was first observed as the officer described and that something was occurring between the defendant and the pedestrian. Only the officer testified that the pedestrian fled.[*] The defendant was not questioned in this regard. The defendant conceded driving through the ditch and conceded having alcohol on his breath. Both the defendant and the officer agreed that the defendant declined to consent to a search. It is apparent that there was a significant delay before a narcotics officer arrived, although probably not close to an hour. It appears that the defendant was not told that he was under arrest for careless and reckless driving until after Detective Crockett arrived.
It is unclear exactly when the marijuana was discovered in relation to the inventory, or search, of the vehicle. However, it must have been after the arrival of Crockett. *159 The material was obviously seen from outside the vehicle with the aid of the flashlight but it is uncertain whether the car door was open or not.
Under the aforesaid circumstances, it is apparent that the officer at least observed suspicious conduct closely followed by the flight of the defendant. The officer had a duty to stop this vehicle and make a further inquiry. State v. Sims, 426 So.2d 148 (La.1983).
There is no question that the search cannot be substantiated based on consent, and it appears that the careless and reckless arrest was intended to obtain authority to inventory the vehicle. Even though a number of elements of a valid inventory are present, all are obviously not. State v. Sims, supra; State v. Hardy, 384 So.2d 432 (La.1980); State v. Killcrease, supra.
However, the absence of a few of the elements to be considered in evaluating whether a true inventory was conducted does not necessarily invalidate the inventory. Rather, it is the totality of the circumstances and the true purpose of the inventory that determine the issue. See State v. Sims, supra, and State v. Moak, 427 So.2d 1233 (La.App. 2d Cir.1983).
An inventory conducted for the purpose of securing evidence, rather than to determine the contents of the vehicle, is fatally flawed. State v. Sims, supra; State v. Rome, 354 So.2d 504 (La.1978); State v. Jewell, 338 So.2d 633 (La.1976). Thus, the trial court correctly determined that the seizure of the incriminating evidence here could not be substantiated on the basis that it was located during a valid inventory.
The search also cannot be maintained on a plain view basis. The elements of plain view as originally established by Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and recently confirmed by Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), are not present. Indeed, the deputy had a right to stop the vehicle, and thus had a right to be near the vehicle. He further had a right to shine his light in the car from outside the vehicle. U.S. v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927). The material appeared to be marijuana. Thus, two of the three elements of probable cause, "prior right" and "probable cause to believe" the substance seen was a dangerous drug are satisfied. However, the other criteria, that the substance be seen "inadvertently," does not appear to have been met. The strong implication on this record is that the marijuana was located during the process of the inventory search. Therefore, it was not inadvertently discovered because the inventory was a pretext. Coolidge, supra, 403 U.S. at 470, 91 S.Ct. at 2040.
However, this search could readily have been sustained under Carroll v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Carroll doctrine allows the stop and search of a vehicle if that search is based on facts that would justify the issuance of a warrant. Carroll, supra; U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Thus, if the officer's testimony that he saw the defendant exchange money for a plastic bag closely followed by the flight of the pedestrian and the driver of the vehicle is accepted, probable cause to search the defendant's vehicle existed.
However, in addition to determining that the search could not be justified based on an inventory theory, the trial court indicated that it could not find a valid basis to substantiate the search. We, therefore, must assume that the trial court did not accept the officer's testimony because an acceptance of that testimony yields probable cause under Carroll.
In other words, implicit in the trial judge's determination that a valid basis for a search did not exist is a rejection of the search under the Carroll doctrine. Also, implicit in this determination is that the court accepted the defendant's version of the events. Therefore, all that can be said is that the officer observed something transpiring between a pedestrian and the driver of a stopped vehicle. The defendant was *160 then seen to drive away in a reckless manner.
Indeed, this conduct is suspicious and invites inquiry. However, it does not equate to probable cause. We thus determine that the writ was improvidently issued. The writ previously granted is therefore recalled and set aside and the case is remanded to the district court.
WRIT RECALLED and CASE REMANDED.
NOTES
[*] Deputy Schleffman's auxillary partner and the narcotics officer did not testify for the state. Likewise, the defendant's three passengers did not testify.