337 So.2d 1123 (1976)
STATE of Louisiana
v.
Harry CAGE.
No. 57688.
Supreme Court of Louisiana.
September 13, 1976.
Rehearing Denied October 13, 1976.
Arthur L. Harris, Sr., Harris, Stampley, McKee, Bernard & Broussard, New Orleans, for defendant-respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-relator.
DENNIS, Justice.
The defendant, Harry Cage, was indicted for aggravated rape by a grand jury in Orleans Parish. He moved to quash the indictment on the grounds that citizens residing in the Desire housing project were intentionally excluded from the venire from which the grand jury was chosen. The trial judge sustained the motion to quash, and the State appealed. Two days earlier we held that, unless a law or ordinance has been declared unconstitutional, the State has no right of appeal from an adverse ruling in a criminal case. State v. James, 329 So.2d 713 (La.1976). However, because of the brief time between our ruling and the State's appeal, we will consider its motion as an application for writs, and review the trial court proceedings under our supervisory jurisdiction.
The Desire project houses approximately 9,500 black citizens, of whom some 2,695 are at least eighteen years of age. The record is devoid of evidence that any of these adults could not qualify as a juror under La.C.Cr.P. art. 401. Nevertheless, the jury commission discontinued the service of subpoenas upon persons residing in the project during the preparation of the venire from which the grand jury was selected in this case. The chairman of the jury commission testified this action was taken because some *1124 process servers had been threatened with guns and had had their automobile tires slashed in the project. However, the chairman testified that in August, 1975, the commission resumed the service of subpoenas in the Desire project with police protection.
The United States Supreme Court in Thiel v. Southern Pacific Company, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181, 1184 (1946), in the course of exercising its supervisory powers over federal trials, laid down the principles for the selection of fair and impartial jurors from a representative cross-section of the community:
"The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84 [86]; Glasser v. United States, 315 U.S. 60, 85, 62 S.Ct. 457, 471, 86 L.Ed. 680 [707]. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury." (Emphasis added).
As a result of later decisions by the high court, e.g., Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), these requirements are now applicable to the selection of state petit and grand juries under the Sixth and Fourteenth Amendments to the United States Constitution.
Louisiana has adopted these principles in its constitution, La.Const. Art. I, § 16, Art. V, §§ 33, 34 (1974), its statutory law, La.C. Cr.P. arts. 401, et seq., and in the rules of its highest court, La. Supreme Court rule XXV.
We recognized our commitment to these principles in State v. Enloe, 276 So.2d 283 (La.1973) wherein we held that "[i]n the context of jury selection, due process requires only that the defendant be afforded with a jury from which there has been no arbitrary exclusion of any particular group of individuals * * *" (emphasis added), and recently in State v. Procell, 332 So.2d 814 (La.1976), wherein we reversed a conviction by a jury from which the jury commission had intentionally excluded those whom it anticipated would claim exemptions from jury service.
In finding that the grand jury in the instant case had not been properly selected, the trial judge stated:
"The court is of the opinion that the jury selection process was not a complete cross-section of the community based upon the fact that the action of the Jury Commissioner and his process servers, operating outside the scope of their authority, systematically and intentionally deprived a certain section of the population, namely persons who are black, who live in subsidized housing, and belong to a certain socio-economic segment of the community, from the possibility of appearing on the grand jury which indicted Harry Cage. The cases cited in this opinion, along with the Louisiana Code of Criminal Procedure and the testimony adduced upon hearing on the motion, is the basis for the Court's ruling." The State does not deny that the jury commission failed to follow the law or that it excluded Desire project residents from possible service upon the grand jury. However, the State argues that the trial judge was in error in quashing the indictment because, under the circumstances, the failure to serve subpoenas within the project was excusable and, in any event, did not *1125 prevent the impanelling of a grand jury venire representing a fair cross-section of the community.
We are not persuaded by these arguments. In the instant case the defendant did not seek to establish a prima facie case of purposeful discrimination by statistical data, which the State then might have overcome by evidence presenting a constitutionally acceptable explanation for racial or class disparities shown to exist. Cf. Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); Pierre v. Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757 (1939); Salary v. Wilson, 415 F.2d 467 (5th Cir. 1969); Billingsley v. Clayton, 359 F.2d 13 (5th Cir. 1966). Instead, he demonstrated directly with the testimony of the chairman of the jury commission an intentional exclusion from jury service of a sizeable geographical group within the parish. The State asserted, without proof, that despite the exclusion of the Desire project dwellers, the grand jury venire constituted a cross-section of the community because poor black people residing in subsidized housing were adequately represented. Even if we accept this assertion as true, we conclude that the grand jury venire was assembled in violation of both federal and state constitutional principles because the exclusion was deliberate and involved a sizeable and distinctive group in the community. Thiel v. Southern Pacific Co., supra; Taylor v. Louisiana, supra; La.C.Cr.P. arts. 409, 412; La. Supreme Court rule XXV.
The words of Justice Murphy, although stated in a different context, are equally applicable here:
"* * * Tendencies, no matter how slight, toward the selection of jurors by any method other than a process which will insure a trial by a representative group are undermining processes weakening the institution of jury trial, and should be sturdily resisted. That the motives influencing such tendencies may be of the best must not blind us to the dangers of allowing any encroachment whatsoever on this essential right. Steps innocently taken may one by one lead to the irretrievable impairment of substantial liberties." Glasser v. United States, 315 U.S. 60, 86, 62 S.Ct. 457, 472, 86 L.Ed. 680, 707 (1942).
We attribute no evil motive to the jury commission in its failure to cause subpoenas to be served on prospective jurors in the Desire housing project. On the contrary, it appears that service was discontinued for a period of time in this area out of a sincere concern for the safety of the process servers. Furthermore, we do not doubt that the jury commission itself lacked the wherewithal to provide the needed protection and that time was required to obtain assistance from other governmental agencies. But the fact remains that a particular geographical group was intentionally excluded from the potentiality of service upon the grand jury in this case. If we were to approve the deliberate omission of one neighborhood for one grand jury term because of the hazards described here, in the future we would quite logically be asked to sanction the expansion of this tendency to numerous other areas and jury terms, resulting in irretrievable impairment of constitutional liberties. The State itself is ultimately responsible under the federal constitution and its own charter for selecting, serving and obtaining fair and impartial grand juries, and we have no doubt that it possesses adequate physical police power to perform this duty anywhere within its boundaries. Therefore, we cannot excuse the intentional failure to serve subpoenas upon a particular group of prospective jurors in this case merely because they resided in a neighborhood having a high incidence of crimes.
Accordingly, the ruling of the trial court is affirmed.
SANDERS, C.J., dissents with written reasons.
SUMMERS and MARCUS, JJ., dissent.
SANDERS, Chief Justice (dissenting).
For a short time in 1975, the process servers discontinued the service of jury summons in the New Orleans Desire Housing Project because of violence against them. Service was soon resumed with police *1126 protection. The Desire project is occupied largely by black residents, of which an estimated 2,695 are at least eighteen years of age.
During this period, the Jury Commission, selected a 75-member jury venire, of which "from 45 to 55 percent" were black. From the venire, a 12-member Grand Jury was drawn. This Grand Jury indicted Harry Cage for aggravated rape.
The majority affirms the quashing of the indictment because of the arbitrary exclusion of a "geographical group." I disagree.
Article 419 of the Louisiana Code of Criminal Procedure provides:
"A general venire, a grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant."
In the present case, the New Orleans Jury Commission excluded no one. The failure of service was due to the violence against the process servers. There is no showing of how many prospective jurors failed to get service. Neither does the record reflect that the jury venire failed to contain a fair cross-section of the community.
I cannot agree that the Desire residents are a "distinctive group" which must be represented in the jury pool if constitutional mandates are to be obeyed. The housing project is more accurately described as an identifiable geographic location. If the theory espoused by the majority is uniformly applied, it will impose great burdens upon the administration of criminal justice. The inability to make service on a resident or residents of other large apartment complexes in New Orleans would likewise frustrate court proceedings. Under the same theory, court proceedings would also be brought to a halt when identifiable locations cannot be reached by process servers because of flood or other natural disasters. Clearly, no constitutional doctrine requires this result.
In any event, there is no showing of fraud or great wrong as required by Article 419 of the Louisiana Code of Criminal Procedure. See State v. Cripps, 259 La. 403, 250 So.2d 382 (1971); State v. Lynch, La., 323 So.2d 781 (1975); State v. Larue, La., 324 So.2d 384 (1975). Hence, I would uphold the indictment.
For the reasons assigned, I respectfully dissent.