Ronnie **ATWELL**, Plaintiff-Appellant,

v.

Frank C. **BLACKBURN**, Warden, **Louisiana State Penitentiary**, et al., Defendants-Appellees.

No. 85–3187.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1986.

Lawrence B. Fabacher, II, New Orleans, La. (Court appointed), for plaintiff-appellant.

Terry Boudreaux, Patricia E. Black, Asst. Dist. Attys., New Orleans, La., for defendants-appellees.

Before CLARK, Chief Judge, GOLDBERG and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Rennie Gordon Atwell, who is serving a life sentence in the Louisiana state penitentiary, appeals from the district court's denial of his petition for writ of habeas corpus. Atwell asserts two primary grounds for relief. First, he claims that he was indicted by a grand jury that did not represent a fair cross-section of the community as required by the United States Constitution. Second, he contends that the state's failure to disclose prior arrest and conviction records of potential state witnesses and jurors and potential jurors' voting records violated his due process rights. Finding that Atwell has failed to demonstrate a constitutional violation, we affirm.

**Facts and Proceedings Below**

In early 1975, the Orleans Parish Jury Commissioners ceased requiring process servers to serve jury duty summons in the New Orleans Desire Housing Project because of violence in that area. The service of jury duty summons was resumed by August or September of 1975. On March 1, 1975, during the time that summons were not being served in the heart of the Desire housing project, a grand jury was impaneled, which continued until August 31, 1975. On April 3, 1975, petitioner Atwell was indicted by this grand jury for first degree murder. Atwell was convicted for first degree murder on February 18,

1976,[1] by a petit jury selected after service of jury duty summons in the Desire project had been resumed. The Louisiana trial court sentenced Atwell to life imprisonment without benefit of pardon, parole, commutation, or suspension of sentence.

The Louisiana Supreme Court affirmed Atwell's conviction and sentence on direct appeal, finding that the trial court had properly denied Atwell's motion to quash his indictment, but remanded for a hearing to determine whether the state had violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose prior arrest and conviction records of its potential witnesses. *State v. Harvey,* 358 So.2d 1224 (La.1978). After a hearing on remand, the trial court found that, at the time of Atwell's trial, the state had no knowledge of any prior convictions of its witnesses and that there was no evidence that the state's witnesses had any prior arrests or convictions. On appeal, the Louisiana Supreme Court affirmed. *State v. Harvey,* 369 So.2d 134 (La.1979). Atwell was represented by counsel throughout his state trial, appeal, proceedings on remand, and subsequent appeal.

1. Atwell and another conspired to rob Robert Alexander, committed armed robbery of him, during the course of which Alexander was murdered, and thereafter divided the robbery proceeds among themselves and Atwell's co-defendant James Harvey.

2. Atwell asserted a third (and final) ground for relief in his habeas petition, complaining of the fact that his sentence was "without benefit of probation or suspension of sentence." The jury verdict found Atwell "Guilty without Capital Punishment or Benefit of Parole, Probation, or Suspension of Sentence." Atwell's complaint, though rather confused, appears to have been that the Louisiana law which authorized a verdict as above set out did not become effective until July 1973, and hence could not constitutionally be applied to his offense which was committed January 2, 1973. However, Atwell's chronology is mistaken, as the law authorizing this character of verdict came into effect July 12, 1972. Acts 1972, No. 502 (House Bill 97, amending article 817 of the Louisiana Code of Criminal Procedure). Although that law was itself amended in June 1973 (effective July 1973), this 1973 amendatory act specified that

Atwell filed this habeas corpus petition in the district court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 2254. The state concedes that Atwell has exhausted his state remedies. The district court referred the case to a magistrate, but later revoked the order and, without a hearing, denied relief on all grounds.[2]

**Discussion**

*Cross-Section Claim*

■ Atwell seeks federal habeas relief based on his claim that exclusion of the Desire housing project residents violated his constitutional right to a fair cross-section of the community on the panel from which his grand jury was drawn. *See Eggleston v. Estelle,* 513 F.2d 758, 760–61 (5th Cir.1975). In *State v. Cage,* 337 So.2d 1123 (La.1976), the Louisiana Supreme Court addressed a challenge by Harry Cage of the identical grand jury that indicted Atwell. *See State v. Ferguson,* 358 So.2d 1214, 1222 (La.1978) (Summers, J., concurring). The Louisiana Supreme Court held that the exclusion of Desire housing project residents from jury service, though not improperly motivated, nevertheless violated Cage's federal and state constitutional rights "because the exclusion was deliber-

"[t]his Act shall not apply to the prosecution and trial for any crime committed before the effective date of this Act. Qualification of verdicts for crimes committed before that time shall be governed by the law existing at the time the crime was committed." Acts 1973, No. 125, section 2 (Senate Bill 90, amending article 817 of the Louisiana Code of Criminal Procedure). Hence, Atwell's case continued to be governed by the 1972 law, which authorized the sentence in question and was the law in effect when his crime was committed. Atwell's third ground may also have included a complaint of the 1979 repeal of the law (La.R.S. 15:571.7) which was in effect when he was sentenced and allowed petition requesting commutation of a life sentence after serving ten years and six months confinement. We have held that this repeal did not violate the rights of those to whom the former statute had been applicable. *Dunn v. Maggio,* 712 F.2d 998 (5th Cir.1983), *cert. denied,* 465 U.S. 697, 104 S.Ct. 1297, 79 L.Ed.2d 697 (1984). Atwell's counsel conceded at oral argument before us that his sentence was not illegal. This concession is well taken. The district court did not err in holding Atwell's third ground was without merit.

ate and involved a sizeable and distinctive group in the community." *Cage*, 337 So.2d at 1125. It sustained the trial judge's quashing of Cage's indictment. Atwell, prior to his trial, moved through his counsel to quash his indictment on the ground that residents of the Desire project were not being served with jury duty summonses when his grand jury was selected. A copy of the transcript of the testimony at Cage's hearing on this subject was introduced in support of Atwell's motion and considered by the trial court, which nevertheless overruled the motion. On direct appeal of Atwell's conviction, the Louisiana Supreme Court sustained the trial court's refusal to quash Atwell's indictment because of its decision that same day in *Ferguson*, 358 So.2d at 1216–17, that *Cage* should be applied prospectively only to venires selected after the date of the *Cage* decision. *Harvey*, 358 So.2d at 1229–30.

Because we are not bound by the Louisiana Supreme Court's interpretation of the United States Constitution, we must determine whether Atwell established in the federal district court that he is entitled to habeas relief.[3] Atwell, as habeas petitioner, bears the burden of proving, at the least, that a constitutionally distinctive group or identifiable segment of the community was purposefully excluded from his grand jury venire by the jury selection process. In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Supreme Court articulated the showing necessary to establish a violation of the Sixth Amendment fair cross-section requirement. The defendant must show:

"(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 668.

In addressing the underrepresentation requirement, the *Duren* Court stated: "Initially, the defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement." *Id.* Furthermore, the defendant must show that the underrepresentation of the group at issue "generally *and on his venire, was due to* their systematic exclusion in *the* jury *selection process.*" *Id.* at 669 (emphasis added). Once the defendant has made a *prima facie* showing, the state may justify the infringement "by showing attainment of a fair cross section to be incompatible with a significant state interest." *Id.* at 671.[4]

---

**3.** In a different procedural context, we addressed a challenge raised by another habeas petitioner to a petit jury selected from the same venire from which the grand jury that indicted Atwell was selected. In *Preston v. Maggio*, 741 F.2d 99 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985), we upheld the denial of habeas relief to petitioner Preston, who challenged his Louisiana conviction on the same Desire housing project grounds asserted by Atwell. However, Preston had not challenged the composition of his jury at his trial or on direct appeal in the state court system. His state court habeas petitions were denied without comment. Because Preston had failed to comply with the Louisiana contemporaneous objection rule, we were compelled by *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to determine whether he showed "cause and prejudice" respecting his failure to object. Declining to fully define "actual prejudice," we observed that "Preston must,

as a minimum, [have shown] that names of Desire residents were in fact chosen from the wheel to make up the venire out of which his jury panel was eventually chosen, and that they were not served." *Id.* at 101. Based on testimony offered at the district court's evidentiary hearing *and* "[t]he facts contained in the *Cage* opinion [stipulated by the parties]," we concluded that there was no evidence that the names of any Desire residents were chosen to be served. *Id.* at 101 and 102 n. 5. In addition, we determined that the excluded group was too small statistically for us to infer that some Desire residents must necessarily have been selected for the venire. *Id.* at 102.

**4.** *Cf. Vasquez v. Hillery,* —— U.S. ——, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (systematic exclusion of blacks from grand jury in violation of equal protection clause is not subject to harmless error review).

■ Because Atwell has not established that the failure to serve jury duty summonses in the Desire housing project caused residents of that project to be underrepresented on his grand jury venire, we find that his claim in this connection must fail. At the state trial court hearing on Atwell's motion to quash his indictment, the state and the defense entered into a stipulation concerning the testimony offered in the *Cage* case by the Chairman of the Orleans Parish Jury Commissioners. The trial court entered the transcript of the December 15, 1975 evidentiary hearing conducted on the motion to quash in the *Cage* case into Atwell's trial court record. Atwell presented no additional evidence to the state court in support of his motion to quash.[5] Atwell asserts that his evidence is the same as the *Cage* evidence and does not suggest that he sought to offer, either before the state trial court or the federal district court, any evidence other than the transcript of the testimony at the *Cage* hearing.

■ The transcript of the testimony at the *Cage* hearing on the grand jury selection reflects that, during the time the grand jury at issue was impaneled, service of jury duty summons was discontinued in the Desire housing project, or at least in "the heart" of the project.[6] Also, a housing project statistician testified that in October 1975 there were 9,531 residents in the housing project and that the entire Desire

population was black.[7] In addition, the Chairman of the Orleans Parish Jury Commissioners testified that, in impaneling a grand jury, venires of seventy-five persons were drawn from the Register of Voters,[8] and that the trial court judge selected the grand jury from the venire. There was *no* evidence that any Desire resident (or a resident from the heart of the project) was selected for Atwell's venire. Nor was there any evidence as to the number of registered voters in the Desire project or the statistical likelihood that a Desire resident would have been chosen. Moreover, there was no evidence concerning the proportion in Orleans Parish of persons with demographic characteristics similar to those in the Desire project. The Jury Commission Chairman did testify that the seventy-five-person grand jury venires were usually forty-five to fifty-five percent black. There was no other evidence of the racial or socio-economic makeup of the particular venire or of Atwell's grand jury which was chosen from it. Just as in *Preston* (where the record apparently contained all the same evidence as here, plus other evidence), we conclude that "no evidence was presented that in the selection process for" Atwell's grand jury venire "names of any Desire residents were chosen for the wheel to be served in the first place," *id.* at 101 (footnote omitted), and the Desire group "is so small that we may not infer, as a statistical matter, that some number

5. Atwell's state record contains no transcript of a hearing on his motion to quash. The minute entries reflect that a copy of the transcript of the evidence at the *Cage* hearing was all that was offered or considered on Atwell's motion, and this comports with the parties' characterization of the Atwell proceedings. Atwell's state record *does* include a copy of the complete transcript of the testimony at the *Cage* hearing on Cage's motion to quash.

6. The Chairman of the Orleans Parish Jury Commissioners testified that during the time in question "we weren't serving the heart" of the project. He further testified that process servers were not required to serve within the project during this time: "I let them take it on their own. If they wanted to go in, they could. If not, I wouldn't force them." When asked "some of your process servers did go in there?"

he replied, "It's possible, but I doubt it sincerely." At another point he was asked "were your process servers not going into the Project area?" and he answered, "They were told they didn't have to go if they didn't want to. That's correct. I don't think anybody was going into the Desire Project." He also testified that this had nothing to do with race, or other group characteristic, but "just fear of the man's life." There was no contrary evidence.

7. The Louisiana Supreme Court's opinion in *Cage* reflects that 2,695 of these residents were at least eighteen years of age. 337 So.2d 1123.

8. No complaint has been made in this federal habeas proceeding respecting use of the list of registered voters as the sole source from which names for a venire were drawn.

of them must necessarily have been included in the venire chosen from the wheel." *Id.* at 102.[9] Accordingly, Atwell has tendered no *prima facie* showing that the practice of not serving within the Desire project affected the make-up of his grand jury venire. The district court correctly ruled that no constitutional defect was shown respecting the selection of the grand jury.[10]

*Due Process* Brady v. Maryland *Claim*

Atwell also contends that the state failed to disclose to him prior arrest and conviction records of its potential witnesses in response to his pretrial request in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In ruling on Atwell's direct appeal, the Louisiana Supreme Court, relying on *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), remanded for a hearing to determine whether there was suppression of material "for which there was a substantial basis for claiming that materiality existed," 358 So.2d at 1233. After the remand hearing, the Louisiana Supreme Court affirmed the trial court's finding that

---

**9.** In his concurring opinion in *Ferguson,* Justice Summers of the Louisiana Supreme Court stated with respect to the Desire project service issue presented there (which he stated involved the same grand jury):

"[R]esidents on the outskirts of the project were served.

"Of those who lived within the project and whose names were drawn for inclusion on the jury venire from which the grand jury was drawn, the chairman of the jury commission guessed that less than fifty percent resided within the heart of the project. He was also of the opinion that much less than ten percent of the grand jury venire were residents of the project.

"The jury wheel from which the grand jury venire of 425 was drawn consisted of eighteen thousand names. These names were, in turn, taken from files containing two hundred thousand names compiled from the voter registration list. The commissioner could not say how many residents of the Desire Project were included on the list from which the grand jury venire was selected." *Ferguson,* 358 So.2d at 1222–23.

We note that none of this testimony or evidence is included in the transcript of the *Cage* hearing testimony introduced in Atwell's case or is otherwise in this record or Atwell's state record (apparently in *Ferguson* there was different evidence on this issue than in *Cage*; no reference to the *Ferguson* evidence was made below or in Atwell's state record). Nor do we think that these recited "facts" establish that the grand jury venire in question here listed any Desire residents who were not served.

**10.** Hence we pretermit all other questions in this respect, including whether Desire project residents are a constitutionally distinctive group and the legal sufficiency of the reasons for not requiring process to be served.

Atwell had an equal protection right to a grand jury selected under procedures free from racial discrimination. No invasion of such right is shown. We do not hold that Atwell also had a right (or one cognizable on habeas corpus) to a grand jury selected under cross-sectional procedures similar to those implicated by the Sixth Amendment, nor do we intimate any opinion on that issue; we merely assume, *arguendo only*, that he did have such a right, and hold that even if he did, a violation thereof is not shown.

In light of the comments in the dissenting opinion, we note that in *Cage* the Louisiana Supreme Court stated (337 So.2d at 1125):

"We attribute no evil motive to the jury commission in its failure to cause subpoenas to be served on prospective jurors in the Desire housing project. On the contrary, it appears that service was discontinued for a period of time in this area out of a sincere concern for the safety of the process servers. Furthermore, we do not doubt that the jury commission itself lacked the wherewithal to provide the needed protection and that time was required to obtain assistance from other governmental agencies."

In *Cage* (and in this case), the state courts, trial and appellate, found no racial or other discriminatory animus to play any part in the decision temporarily not to require process service in the Desire project. The record in this case—including the transcript of the *Cage* hearing—contains no evidence of any such animus, and affirmatively reflects the contrary, namely, that the only concern was a *bona fide*, realistic one for the safety of the process servers. No claim to the contrary was made below or to us. Further, we do not approach the question before us from the point of view of "prejudice" in the sense of requiring Atwell to show that this indictment might have been less likely had not the service of process in the project been suspended; rather, we merely require him to show that at least some members of his grand jury *venire* were, or were likely, Desire residents, so that the challenged practice would at least have potential relevance to his case. But, as noted, there is no showing whatever of the racial or socio-economic composition of Atwell's grand jury venire, much less of his grand jury itself.

the state had not suppressed information requested by the defendants. 369 So.2d at 134.

■ Factual determinations made by a state court after a full and fair hearing on the merits are entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 767–69, 66 L.Ed.2d 722 (1981). Unless we determine that the state court's factual finding is not "fairly supported by the record," Atwell must establish by "convincing evidence" that the factual determination was erroneous. *Id.* at 771. We hold that the state court's determination is supported by the record. Atwell's claim that the state attorney who testified at the remand hearing was not familiar with the circumstances of Atwell's trial is unsupported as the attorney demonstrated sufficient knowledge of the circumstances of Atwell's trial. He denied any prosecution knowledge of any prior record of the witnesses. The defense counsel stated that he was not aware of any prior convictions of the state witnesses, although he said defendants (Atwell and Harvey) "do believe there was prior arrests, but not any prior convictions." Atwell simply did not make out a *Brady* or *Agurs* violation at his state hearing. There was no evidence or tender of evidence that any of the witnesses had any convictions or arrests. So far as the record reflects, this was purely unsupported, general speculation on the part of the defense.[11]

■ Atwell also challenges the trial court's denial of his request for prior arrest and conviction records of potential jurors. The Louisiana Supreme Court, accepting as true Atwell's allegations that the state had this information and intended to use it in jury selection, and that he could not obtain it from other sources, held that Atwell was entitled either to be given the information *or* to question the prospective jurors. Finding no indication that Atwell was de-

nied the right to question prospective jurors, the Louisiana Supreme Court affirmed the trial court's decision. 358 So.2d at 1230–32. We find that Atwell has failed to establish that this information would be material to his case. He does not assert that he was prevented from questioning the prospective jurors. In addition, he has failed to allege any facts supporting his claim that some prospective jurors had criminal records and that this information was suppressed by the state.

■ Finally, Atwell also asserts a due process violation in the trial court's denial of his motion to examine the prior voting records of prospective jurors, which was affirmed by the Louisiana Supreme Court. 358 So.2d at 1231. Again, Atwell has not established that this information would be material to his case or that he was unable to obtain this information on the jury voir dire. Accordingly, we find that Atwell has not established a due process violation.

### Conclusion

Finding that Atwell's claims are without merit, we affirm the district court's denial of the writ of habeas corpus.

AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

The majority's opinion today wrongly applies the burden of proof standards set out in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), for establishing a prima facie case of unconstitutional deprivation of a grand jury constituted from a fair cross-section of the community. In particular, the court would require defendant to demonstrate underrepresentation, notwithstanding *direct* proof of intentional, systematic exclusion of an identifiable group. *Ante* at 505–06. Because the appropriate benchmark for analysis is *Thiel v. Southern Pacific Co.,* 328 U.S.

---

11. No specific witness, or possible specific arrest or conviction, was ever mentioned by the defense. It was not shown that the defense ever questioned any witness at trial about prior ar- rests or convictions, or requested leave to do so out of the presence of the jury or otherwise. No relevance of possible prior arrests was suggested.

217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946), I respectfully dissent.[1]

## A. *Direct* Prima Facie Case and Burden of Proof

*Duren* was a case in which the defendant attempted to demonstrate *statistical* underrepresentation of women from grand jury venires on the basis of their potential to claim automatic exemptions. It did not rest on direct allegations of intentional exclusion of women from grand juries. Rather, *Duren* supplied standards to determine when statistics can raise a prima facie *inference* of intentional exclusion of an identifiable group. "[I]n order to establish a prima facie case, it was necessary for petitioner to show that the underrepresentation of women, generally and on his venire, was *due to their systematic exclusion* in the jury-selection process." 99 S.Ct. at 669 (emphasis added).

*Duren* thus provides guidance to efforts to "reason backwards" from suspicious statistics of underrepresentation to an impermissible cause of the underrepresentation, purposeful exclusion. It is such exclusion, or intentional discrimination, that is the harm.[2] Inferential assistance from statistical analysis is not necessary where the harm of exclusion can be shown directly, as it has been here.

Where there is direct evidence of intentional discrimination, the proper starting point is *Thiel,* not *Duren.* In *Thiel,* the Court based its findings of impermissible, purposeful exclusion on direct testimonial evidence of a clerk of the court and of a jury commissioner. The clerk and commissioner refused to place names of day-laborers in jury venire lists because those individuals allegedly would request and receive excuses for financial hardship. Without requiring *any* showing that day-laborers would have been members of Thiel's venire absent purposeful exclusion, the Supreme Court found an unconstitutional exclusion of an identifiable group.

Wage earners, including those who are paid by the day, constitute a very substantial portion of the community, a portion that cannot be intentionally and systematically excluded *in whole or in part* without doing violence to the democratic nature of the jury system. Were we to sanction an exclusion of this nature we would encourage whatever desires those responsible for the selection of jury panels may have to discriminate against per-

**1.** The recent Supreme Court decisions in *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), *United States v. Stauffer Chemical Co.,* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984), and *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), appear to prohibit nonmutual defensive collateral estoppel against governmental parties in habeas corpus review of criminal cases. Thus, we cannot simply apply the Louisiana Supreme Court's determination that "the grand jury venire was assembled in violation of both federal and state constitutional principles because the exclusion was deliberate and involved a sizeable and distinctive group in the community," *State v. Cage,* 337 So.2d 1122, 1125 (La.1976). *See United States ex rel. Barksdale v. Blackburn,* 639 F.2d 1115, 1121 n. 10 (5th Cir. 1981) (characterizing as offensive and prohibiting in habeas corpus proceedings collateral estoppel of identical grand jury discrimination claims previously litigated unfavorably to the government); *cf. Hercules Carriers, Inc. v. Claimant State of Florida,* 768 F.2d 1558, 1578–82 (11th Cir.1985) (extending to defensive collateral estoppel the *Mendoza* governmental-party exclusion). We are instead required indirectly to redetermine what is common knowledge, was admitted by the Government, and was found as a matter of fact and law by the Louisiana Supreme Court, *viz.* that a sizeable group of black individuals at the Desire housing project were intentionally and unconstitutionally excluded from grand jury venires.

**2.** *See Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 2166–68, 33 L.Ed.2d 83 (1972). It has long been recognized that there is no right to a fully representative grand or petit jury, only to a selection process that does not impermissibly exclude, or discriminate, against distinctive groups of individuals within the community. *See, e.g., Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975); *Thiel,* 66 S.Ct. at 985; *Akins v. State of Texas,* 325 U.S. 398, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692 (1945). Hence, the harm is not in the underrepresentation, but in the exclusion. Further, "[t]he harm [of grand jury racial discrimination] is not only to the accused, indicted as he is by a jury from which a segment of the community has been excluded. It is to society as a whole." *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979).

sons of low economic and social status.... It follows that we cannot sanction the *method* by which the jury panel was formed in this case.... On that basis it becomes *unnecessary to determine whether the petitioner was in any way prejudiced* by the wrongful exclusion or whether he was one of the excluded class.... It is likewise immaterial that the jury which actually decided the factual issue in the case was found to contain at least five members of the laboring class. The evil lies in the admitted wholesale exclusion of a large class of wage earners in disregard of the high standards of jury selection.

*Thiel,* 66 S.Ct. at 987–88 (footnote and citations omitted) (emphasis added).

*Thiel* thus elucidates the foundational tenet of American jurisprudence that any party to a lawsuit who is entitled to a jury shall have her jury selected according to a process that is free from the taint of purposeful discrimination. This tenet becomes bedrock when the party is a defendant to a charge of murder and the identifiable group and the discrimination alleged are

racial. *See, e.g., Strauder v. West Virginia,* 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880). The majority in today's case would have us dissolve the bedrock and dilute those high standards by forming a constitutionally opaque solution and requiring a needless search for unconstitutional precipitate.

In particular, the majority would require defendant Atwell to establish prejudice, by providing some evidence that unserved potential jurors in the Desire project were actually excluded from *his* venire. Ante at 506–507. This could be directly established by proof of nonservice on those venire members chosen from the wheel for Atwell's indictment, or indirectly by statistical evidence raising the inference that an unserved Desire resident would have been included in Atwell's venire. Like Diogenes' search through Athens for an honest man, such additional requirements are burdensome and unnecessary in light of *Thiel*'s specific injunction against a harm inquiry.[3] They also are fundamentally unfair in plain view of Atwell's right to a grand jury selection process free from taint.[4]

**3.** *See Cassell v. State of Texas,* 339 U.S. 282, 70 S.Ct. 629, 631–33, 94 L.Ed. 839 (1950) (distinguishing between murder defendant Cassell's claim based on underrepresentation and that based on intentional exclusion of blacks from grand jury service, and holding that such discrimination "does not depend upon systematic exclusion continuing over a long period and practiced a succession of jury commissioners.... [I]t is enough to have direct evidence based on the statements of the jury commissioners in the very case.").

Even the Louisiana Supreme Court, in *Cage* itself, recognized the sufficiency of direct proof and the subsequent irrelevance of demonstrating underrepresentation.

In the instant case the defendant did not seek to establish a prima facie case of purposeful discrimination by statistical data, which the State then might have overcome by evidence presenting a constitutionally acceptable explanation for racial or class disparities shown to exist.... The State asserted, without proof, that despite the exclusion of the Desire project dwellers, the grand jury venire constituted a cross-section of the community because poor black people residing in subsidized housing were adequately represented. Even if we accept this assertion as true, we conclude that the grand jury venire was assembled in viola-

tion of both federal and state constitutional principles *because the exclusion was deliberate* and involved a sizeable and distinctive group in the community.... [I]t appears that service was discontinued for a period of time in this area out of a sincere concern for the safety of the process servers.... But the fact remains that a particular geographical group was *intentionally* excluded from the *potentiality* of service upon the grand jury in this case." *Cage,* 337 So.2d at 1125 (citations omitted) (emphasis added).

**4.** *See Vasquez v. Hillery,* —— U.S. ——, 106 S.Ct. 617, 623–24, 88 L.Ed.2d 598 (1986) (holding that racial discrimination in grand jury selection does not countenance harmless error analysis, i.e., does not require the defendant to demonstrate actual prejudice or effect on the fairness of his subsequent trial, and indicating that mandatory reversal is required); *Peters,* 92 S.Ct. at 2168. *Cf. Rose,* 99 S.Ct. at 2998 n. 4; *Guice v. Fortenberry,* 661 F.2d 496, 499 (5th Cir.1981) (en banc) (requiring convictions to be set aside).

Although the Louisiana Supreme Court in *Cage* found that the Desire project was black, 337 So.2d at 1123, that Court did not base its holding on Equal Protection/Due Process "fundamental fairness" principles, *see Peters,* 92 S.Ct. at 2169, but rather relied upon cross-section

The serious nature of the discrimination demonstrated by Atwell does not permit the State to speculate that no harm could have resulted.[5] It requires the Government to demonstrate that no harm actually resulted as a logical certainty. As the *Cage* court determined, this requires a showing that all of the individuals chosen for Atwell's venire were served, and that the jury selection process was therefore free from taint.

## B. Failure of the Louisiana Supreme Court to Apply *Cage*

The Louisiana Supreme Court in *Cage* found that "the jury commission discontinued the service of subpoenas upon persons residing in the project during the preparation of the venire from which the grand jury was selected in this case." 337 So.2d at 1123. When confronted by Atwell's appeal, that Court acknowledged that the *Cage* "motion to quash [was] based upon the *identical grounds* advanced by the present defendant [Atwell]." *State v. Harvey,* 358 So.2d 1224, 1230 (La.1978) (emphasis added). The Louisiana Supreme Court, however, relying on its ruling in *State v. Ferguson,* 358 So.2d 1214 (La.1978), and on the fact that the practices were terminated, refused to apply *Cage* retroactively to Atwell's indictment. *Harvey,* 358 So.2d at 1230. *Ferguson* states:

> We have determined that *Cage* should be applied only prospectively to jury venires improperly constituted by reason of the practices reprobated by the *Cage* holding, especially since the practices were terminated as a result of the *Cage* decision. The interest at stake (proper selection of jury venires) has been adequately served by *Cage* and the corrective measures thereafter instituted. No individual unfairness has resulted in the present case.

*Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), an equal protection case, partially rested its finding of systematic exclusion on *direct* evidence of discrimination:

> This Court has never announced mathematical standards for the demonstration of "systematic" exclusion of blacks but has, rather, emphasized that a factual inquiry is necessary in each case that takes into account all possible explanatory factors.... [W]e do not rest our conclusion that petitioner has demonstrated a prima facie case of invidious racial discrimination on statistical improbability alone, for the selection procedures themselves were not racially neutral.

92 S.Ct. at 1225. Once the prima facie case was made, the burden of proof *shifted to the state* to rebut the presumption of unconstitutional action by showing that permissible, racially neutral criteria were employed. *Id.* at 1226. Equal Protection/Due Process thus provides an alternative theory to the present analysis.

---

cases. There is substantial, uncontroverted evidence in the record to support an Equal Protection/Due Process violation in both *Cage* and *Atwell.*

On January 12, 1976, defendant Atwell filed in the state trial court a written motion to quash the grand jury indictment on state and federal constitutional grounds of "exclusion of identifiable geographic and other groups." State Record, transcript volume 1, at 139. The state trial court denied the motion, to which the defense took timely objection, and ordered the December 15, 1975 "Transcript of Hearing on Motion to Quash" in *Cage* to be placed in the record. *Id.* at 6–7 (minute entry).

In that "Transcript," William L. McCray of the City of New Orleans Housing Authority testified that the number of individuals living in the Desire project as of October 1, 1975 was 9,531, and that 100% were black. *Id.,* appeal volume, copy of *Cage* transcript, at 13. In order to avoid obtaining statistics to assess fluctuations of the Desire population, the trial judge took "cognizance of the fact the area is predominantly black, and [he] wouldn't think this report [of McCray] would change the racial composition that much from a report that would be to a closer date [to the grand jury service exclusion]." *Id.* at 15–16.

The testimony of Earl Duplantier, Chairman of the Orleans Parish Jury Commissioners, which was uncontroverted, established that potential grand jurors from the Desire project were not served *at least* from February of 1975 until July or August of 1975, during which time Cage's grand jury was selected. *Id.* at 3–4, 10.

5. *Compare Hillery,* 106 S.Ct. at 623–24, *with United States v. Mechanik,* — U.S. ——, 106 S.Ct. 938, 942 & n. 1, 943, 89 L.Ed.2d 50 (1986) (applying harmless error analysis to the simultaneous presence of witnesses before a grand jury, in violation of Federal Rule of Criminal Procedure 6(d), and distinguishing the *Hillery* automatic-reversal rule for racial discrimination in grand jury selection on the basis of the long line of precedent and the "societal interest in deterring this sort of error").

As in *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the application of *Cage* prospectively only to venires selected after the date of its decision, will adequately vindicate the constitutional interest at stake.... Under these circumstances, the vindication of the constitutional interest protected by *Cage* does not require reversal of other convictions, fairly tried before petit juries selected from properly confected venires, because of *Cage* defects in the method of selecting the grand jury which indicted the accused.

358 So.2d at 1216–17.

The failure of the Louisiana Supreme Court to grant retroactive effect to *Cage* should not be given any credence by federal courts. First, the Louisiana Supreme Court, in stating that no individual unfairness has resulted, either relied upon suspect "harmless error" analysis or failed to appreciate the necessity for mandatory reversal. If this were not sufficient, the Louisiana Supreme Court misapplied *Daniel.*

*Daniel* itself considered whether the "decision in *Taylor v. Louisiana* [wa]s to be applied retroactively to other defendants *whose opportunity to raise a timely objection to the jury-selection procedures had passed* as of the date of [the] decision in *Taylor.*" 95 S.Ct. at 705 (emphasis added). Since defendant Atwell raised a timely objection at his trial, based upon the *Cage* testimony and the quashing of Cage's indictment, *Daniel* is wholly inapposite. Further, *Cage* did not enunciate new legal standards, but followed *Thiel;* there is thus nothing to apply retroactively under *Daniel.* Even were there some question whether the Louisiana Supreme Court's *decision* should be "retroactively" applied, the *Cage* affirmance should relate back to the *Cage* trial court's quashing of the indictment, requiring *prospective* application in Atwell's case.

## C. The District Court's Denial of Habeas Corpus

The District Court relied upon *Preston v. Maggio,* 741 F.2d 99, 101–02 (5th Cir.1984), *cert. denied* —— U.S. ——, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985), to require that defendant Atwell demonstrate that "Desire residents were selected for service on the grand jury which indicted him, but were not served with a subpoena summoning them for that duty." Federal Record at 75. Because of Atwell's purported failure to meet habeas standards of prima facie proof, the District Court did not reach the retroactivity issue. *Id.* at 73 n. 3.

The District Court's reliance on *Preston* is flawed, and *Preston* itself is subject to question in light of *Thiel* and *Hillery.* The District Court relied on language in *Preston* requiring defendant to demonstrate actual prejudice by evidence of exclusion at the level of the venire *actually* chosen for him. Federal Record at 73–75; *see Preston,* 741 F.2d at 101; *cf. Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Because the harm is the exclusion itself, because harmless error analysis cannot be applied, and because a prima facie case is established by direct evidence of exclusion at the multiple-venire level, Preston had likely met his habeas burden of showing "prejudice."

Although it is wholly unnecessary to demonstrate prejudice in Atwell's case, prejudice was shown by direct evidence of systematic exclusion at the multiple-venire level. Such prejudice can only be negated by Governmental proof that no discrimination occurred.

### Conclusion

*Strauder* and *Thiel* continue to provide constitutional safeguards against the specter of intentional, systematic exclusion of blacks from jury duty. Although such discrimination is today substantially less visible in the sepulchers of our collective judicial wisdom, the invidious practice has yet to rest firmly in its grave. It is inconceivable that the United States Constitution does not supply the nails for such discrimination's coffin. Where systematic misapplication of these laws has thereby resulted in unconstitutional incarceration, the "great writ" of habeas corpus provides the

hammer to strike the Constitutional blow. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 1023–25, 82 L.Ed. 1461 (1938).

Although granting of the petition for habeas corpus is a matter of discretion, *see Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), failure to grant the motion based on erroneous conclusions of law is an abuse of that discretion. *Cf. Eggleston v. Estelle*, 513 F.2d 758, 760–61 (1975). Because defendant Atwell met his burden of proof in establishing a constitutional violation at his trial, and raised this claim at every opportunity on appeal, he is entitled to relief. Further, because the trial court relied upon harmless error analysis and refused to reach the Louisiana Supreme Court's erroneous failure to apply *Cage*, I would accordingly reverse the decision of the District Court and remand the cause with instructions for the writ of habeas corpus to issue.[6]

---

**6.** Because this case should be disposed of on discriminatory exclusion grounds, I do not reach defendant Atwell's other claims.