NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 13-981 consolidated with KA 13-982

STATE OF LOUISIANA

VERSUS

FERMICHAEL HARRISON

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 52373 and No. 54154
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Billy Howard Ezell, and John E. Conery, Judges.

AFFIRMED; REMANDED WITH INSTRUCTIONS.

**Michael Harson**
**District Attorney**
**F. Stanton Hardee, III**
**Assistant District Attorney**
**Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Carey J. Ellis, III**
**Louisiana Appellate Project**
**707 Julia St.**
**Rayville, LA 71269**
**(318) 728-2043**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Fermichael Harrison**

**Fermichael Harrison**
**Louisiana State Penitentiary**
**Main Prison - Walnut 3**
**Angola, LA 70712**

**EZELL, Judge.**

Defendant sold a bag of Lortabs to an undercover narcotics officer in Abbeville in December 2008. On April 13, 2010, the State filed a bill of information charging Defendant, Fermichael Harrison, with distribution of hydrocodone, a violation of La.R.S. 40:968. On July 12, 2011, the parties selected a jury; said jury found Defendant guilty as charged on the same date. The trial court sentenced Defendant to five years at hard labor on August 18, 2011.

On July 16, 2012, the State filed a bill of information alleging that Defendant was a fourth habitual offender, pursuant to La.R.S. 15:529.1. The State filed new bills on July 24 and 26. The July 24 bill changed the designation of his July 2011 conviction from 52373-B to 52373. The July 26 bill changed the statutory citation for the habitual offender action from La.R.S. 15:529.1(A)(4)(b) to La.R.S. 15:529.1(A)(1)(c)(ii). The trial court conducted a habitual offender hearing on September 20, 2012. It found him to be a fourth habitual offender and sentenced him to life imprisonment.

Defendant now appeals his sentence, assigning two errors. For the following reasons we affirm Defendant's sentence.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

The Defendant was not informed of the two-year time limit for filing an application for post-conviction relief as required by La.Code Crim.P. art. 930.8. Therefore, the trial court is directed to inform the Defendant of the provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten

days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice. *See State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues the evidence adduced by the State at the habitual offender hearing did not support his adjudication as a fourth offender. Specifically, he argues the State failed to show that he was represented by counsel at the prior convictions, which were all guilty pleas. He also argues he was not properly advised of his three core constitutional trial rights as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969). In *State v. Shelton*, 621 So.2d 769, 779-80 (La.1993) (footnotes omitted) the supreme court explained:

> If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self[-]incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three *Boykin* rights.

The State replies that it adduced "perfect" transcripts for all three prior convictions, and those transcripts showed that in each matter at issue, Defendant

was properly represented and Boykinized. As the State observes, the transcript it introduced from Defendant's 1993 plea shows that he was represented by counsel, was properly advised of his constitutional rights, and waived them. The State also introduced a transcript of Defendant's 1996 plea that showed Defendant was represented, Boykinized, and waived his rights. Finally, the State introduced a transcript of Defendant's 2003 plea that demonstrates he had counsel, was advised of his *Boykin* rights, and waived them. Thus, this part of Defendant's argument lacks a factual basis.

Defendant also appears to challenge the identification of him as the same person who pled guilty to the three predicate offenses. However, he did not challenge the identification in his written response to the bill or in the hearing below. Thus, he cannot raise this issue for the first time on appeal. La.R.S. 15:529.1(D)(1)(b), La.Code Crim. P. art. 841, *see also State v. Elie*, 10-1494 (La.App. 3 Cir. 10/5/11), 74 So.3d 1216, *writ denied*, 11-2786 (La. 4/13/12), 85 So.3d 1246, and *State v. Dudley*, 06-1087 (La.App. 1 Cir. 9/19/07), 984 So.2d 11.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues that his sentence, although mandatory pursuant to La.R.S. 15:529.1, is excessive. This court has explained:

> Although the minimum sentences imposed upon multiple offenders pursuant to the Habitual Offender Law are presumed constitutional, a court has the power to declare such a sentence excessive under Article I, Section 20 of the Louisiana Constitution. *State v. Lindsey*, 99-3302 (La. 10/ 17/00), 770 So.2d 339. "A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality." *State v. Johnson*, 97-1906, p. 7 (La.3/4/98), 709 So.2d 672, 676. To rebut the presumption of constitutionality, the defendant must show that he is "exceptional, which in this context means that because of unusual

3

circumstances [he] is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *Id.* at 676.

As pointed out by the state, the defendant presented no evidence to show that his particular case was so exceptional that it deserved a downward departure from the mandatory minimum sentence as set forth in La.R.S. 15:529.1. Therefore, we find no merit in this assignment of error.

*State v. Boutte*, 10-928, pp. 5-6 (La.App. 3 Cir. 3/9/11), 58 So.3d 624, 629, *writ denied*, 11-689 (La. 10/7/11), 71 So.3d 314 (alteration in original).

Defendant has failed to show, or even attempted to show, that he is "exceptional." In the absence of such a showing, the assignment lacks merit.

## SUPPLEMENTAL ASSIGNMENT OF ERROR

On November 19, 2013, a supplemental record was lodged with this court. In response, Defendant's counsel filed a timely supplemental brief. The State also filed a supplemental brief.

In his lone supplemental assignment of error, Defendant argues the trial court erred by not striking the entire venire because potential jurors were systematically excluded on the basis of race. Before voir dire questioning began on July 12, 2011, Defendant raised an objection to the composition of the venire and to the method of its selection. The court heard testimony and argument on the objection after trial and ultimately denied relief.

As Defendant also noted in a memorandum he filed below, a jury pool of more than one hundred and fifty individuals was called, but approximately half that number appeared. Twenty-one venire members were chosen to begin jury selection and the jury was selected from that group. Four of the twenty-one were

4

African-American; three of these were removed via the State's peremptory challenges.

The controlling statute is La.Code Crim.P. art. 419(A), which states:

> A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.

The following colloquy occurred between the court and counsel for Defendant and the State:

> [THE COURT:]    If you could convince me that the state, the clerk of court, the registrar of voters, the State of Louisiana, the district attorney's office, does anything to prevent your client from getting a jury of his peers, then I would grant your motion, but you have not done that.
>
> MR. WILLIAMS: I think that's where we most disagree. I'm not saying the state has to take an affirmative action to exclude any particular ethnic group and/or gender base. If the system which is used is flawed, and that's --
>
> THE COURT:      But that's chosen by the state, sir.
>
> MR. WILLIAMS: Well, but we're saying that the system itself -- not that the state is taking any affirmative action, just that the system that is being used at this particular time -- and in particular here in Vermilion Parish; I'm not sure what's going on in other parishes -- is flawed; and if that flawed system leads to a systematic exclusion, which can occur and has occurred here over time, we've met that third prong.
>
> And, once we meet that third prong, it then falls upon the state. And what it says is that:  After defendant makes a prima fascia [sic] case, the state has the burden of justifying this infringement by showing that the achievement of a fair cross section is incompatible with a significant state interest.  They haven't done that. They think it's impractical, they state it's impossible, but they haven't shown where it's an infringement upon a significant state interest. And I think that's where Your Honor and I disagree. I think we've met our three prongs, and now the burden shifts to the state.
>
> THE COURT:      I don't agree.

5

MR. BELLAIRE: Your Honor, this system was found to be valid. It was upheld in 2004 by every court in this state. We've had testimony today that it is unchanged from that time. De facto, it's still the exact same as it was. There has been no change. The Supreme Court says unanimously, this is good. I don't have to go any further.

THE COURT: I'm just giving Mr. Williams and his client his day in court.

MR. BELLAIRE: I understand.

THE COURT: The motion is denied.

MR. WILLIAMS: Thank you, Your Honor. Note our objection.

In *State v. Law*, 12-1024, pp. 12-14 (La.App. 3 Cir. 4/3/13), 110 So.3d 1271, 1280-82, *writ denied*, 13-978 (La. 11/22/13), __ So.3d __, (second, third, and fourth alterations in original) this court explained the general analysis:

> [O]ur supreme court and this court have heard cases in which the racial-composition issue has been raised in the context of motions to quash. For example, the supreme court has reviewed the jurisprudence of a claim of under-representation of a minority in the venire:
>
> > A general jury venire "shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." La.C.Cr.P. art. 419(A). The defendant bears the burden of proving the grounds for setting aside the venire. *State v. Liner*, 397 So.2d 506 (La.1981); *State v. Manning*, 380 So.2d 54 (La.1980). That burden of proof requires that the defendant show more than the underrepresentation of blacks on the petit jury venire in order to prove a systematic exclusion of blacks. *Manning, supra; State v. Anderson*, 315 So.2d 266 (La.1975). The law requires that there must not be a systematic exclusion of blacks in the source or sources from which jury venires are chosen. However, that does not mean that a defendant is entitled to a petit jury which reflects the population of the community in every respect. "Defendants are not entitled to a jury of any particular composition." *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *State v. George*, 371 So.2d 762 (La.1979). In

fact, a jury comprising a complete representation of the various groups within the community would be virtually impossible to seat. *State v. Cage*, 337 So.2d 1123 (La.1976).

*State v. Lee*, 559 So.2d 1310, 1313-14 (La.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991).

This court addressed a claim similar to that asserted here as follows:

> In the case *sub judice*, it is undisputed that the 200 persons in the petit jury venire were selected at random by a computer. After several persons were excused from jury service, the clerk pulled twelve names at random from the jury box, and continued accordingly until a twelve-person jury was selected. During voir dire, the State successfully challenged two jurors for cause but did not peremptorily challenge any jurors. The defendant successfully challenged two jurors for cause and peremptorily challenged five jurors. Although the petit jury venire was approximately 5% to 10% black, no blacks were selected for voir dire. After an all[-]white jury was selected, accepted and sworn in, the defendant filed a motion to quash the petit jury venire on the basis that it did not contain a representative cross-section of the community. According to the defendant, this forced him "to go to trial with an all[-]white jury."

> In *State v. Kirts*, 447 So.2d 1 (La.App. 3rd Cir.1983), *writ not considered*, 464 So.2d 306 (La.1985), this court addressed and rejected the same argument defendant asserts in the case sub judice. In *Kirts*, defense counsel filed a motion to quash the petit jury venire on the morning of trial, contending that the petit jury venire was racially imbalanced. Although no allegation of discrimination was offered for the racial imbalance, counsel for defendant asserted that a newly drawn venire, representative of a cross[-]section of the community, was necessary to assure that defendant would be judged by a fair and impartial jury. On appeal from the trial court's refusal to grant the motion to quash, we rejected *Kirts'* argument. We held that the defendant failed to make a prima facie showing of discrimination where there are no allegations of fraud, and the record is devoid of any indications of such, or that some great wrong was committed that would work irreparable injury to him. *Id.*, 447 So.2d at 3.

7

> In the case *sub judice*, defendant asserts that he was prejudiced by the petit jury venire. We disagree. At the argument of the motion to quash, defense counsel stated that he was not alleging fraud, and offered no evidence of discrimination or irreparable injury attributable to the petit jury venire. Therefore, based on a careful examination of the record, we find that the trial court properly denied defendant's motion to quash the petit jury venire, finding that defendant failed to make a prima facie showing of discrimination. *State v. Kirts, supra*. Defendant's assignment of error is without merit.

*State v. Melancon*, 563 So.2d 913, 914 (La.App. 3 Cir.1990), *writ denied*, 586 So.2d 527 (La.1991). Thus, jurisprudence establishes that Defendant is not entitled to the relief he seeks. He does not allege fraud or systematic racial discrimination. Further, the cases cited show that even if racial imbalance occurred that, without more, would not entitle him to relief.

As noted earlier, Defendant states that a pool of one hundred and fifty potential jurors was called, and roughly seventy five appeared for jury duty. He does not state how many members of either number were African-American. However, twenty one venire members were seated for voir dire, and Defendant states four of them were African-American. We note that this last set of numbers does not show a racial disparity. As mentioned earlier, testimony indicated that approximately fourteen percent of Vermilion Parish's population is African-American. Since four is roughly nineteen percent of twenty one, the representation of African-Americans on the panel seated for voir dire actually exceeded the percentage in the parish at large.

Thus, Defendant argues that African-Americans were improperly excluded from the jury pool but does not provide statistics sufficient to demonstrate the claim. To the extent he does provide numbers that show the presence of African-American venire members in the jury pool, said numbers suggest that a disparity did not occur in this case.

Defendant also mentions that three of the four African-American prospective jurors were eliminated via peremptory challenges by the State. However, he does not argue that those challenges were used improperly pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). Defendant did not make a *Batson* challenge below.

The State relies upon a Supreme Court case, *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664 (1979), in asserting that Defendant failed to make a prima facie case that that a violation occurred. The Louisiana Supreme Court has synopsized Duren as follows:

> In *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), the United States Supreme Court stated that:
>
> > In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
>
> . . . .
>
> Assuming *arguendo* that they did constitute a cognizable class the defendant would still not prevail on his sixth amendment claim, because he fails to meet the second prong of the test that, "the representation of this group *in venires* from which juries are selected is not fair and reasonable in relation to the numbers of such persons in the community." 439 U.S. at 364, 99 S.Ct. 668 (emphasis ours).

*State v. Lowenfield*, 495 So.2d 1245, 1254-55 (La.1985).

The State argues that Defendant failed to meet the second and third prongs of *Duren*. We find that Defendant's argument fails under either legal rationale. Defendant simply does not make a sufficient factual showing to support this assignment of error.

9

## DECREE

For the above reasons, Defendant's sentence is affirmed.  The trial court is directed to inform the Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules—Courts of Appeal.  Rule 2-16.3.